2014-1472

---

# United States Court Of Appeals

## FOR THE FEDERAL CIRCUIT

---

MEYER INTELLECTUAL PROPERTIES LIMITED
and MEYER CORPORATION, U.S.,

*Plaintiffs-Appellants*,

v.

BODUM, INC.,

*Defendant-Appellee*.

---

*On Appeal from the United States District Court for the
Northern District of Illinois in Case No. 06-CV-6329,
The Honorable Harry D. Leinenweber*

---

**BRIEF OF PLAINTIFFS-APPELLANTS MEYER INTELLECTUAL
PROPERTIES LIMITED AND MEYER CORPORATION, U.S.**

Joshua C. Krumholz
HOLLAND & KNIGHT LLP
10 St. James Avenue
11th Floor
Boston, MA 02116
(617) 523-2700

R. David Donoghue
Steven E. Jedlinski
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Floor
Chicago, IL 60603
(312) 263-3600

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiffs-Appellants Meyer Intellectual Properties Limited and Meyer Corporation, U.S., certifies the following in accordance with Federal Circuit Rule 47.4:

1. The full names of every party or amicus represented by the undersigned are:

   Meyer Intellectual Properties Limited and

   Meyer Corporation, U.S.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by the undersigned is:

   The real party in interest is named in the caption.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by the undersigned are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by the undersigned in the trial court or agency or are expected to appear in this Court are:

   Joshua C. Krumholz, HOLLAND & KNIGHT LLP, 10 St. James Avenue, 11th Floor; Boston, MA 02116 Phone: (617) 523-2700.

i

R. David Donoghue, Steven E. Jedlinski, Daniel L. Farris, Michael A. Grill, Anthony J. Fuga and Felisa L. Leisinger, HOLLAND & KNIGHT LLP, 131 South Dearborn Street, 30th Floor; Chicago, IL 60603 Phone: (312) 263-3600.

Allan J. Sternstein, Heather L. Kramer, Katharine N. Dunn, Lisa VonBargen Mueller, and Timothy K. Sendek, DYKEMA GOSSETT PLLC, 10 South Wacker Drive, Suite 2300, Chicago, IL 60606 Phone: (312) 876-1700

Dated:  July 14, 2014          HOLLAND & KNIGHT LLP

                               */s/ R. David Donoghue*

                               Joshua C.  Krumholz
                               10 St. James Avenue
                               11th Floor
                               Boston, MA 02116
                               Tel: (617) 523-2700
                               Fax: (617) 523-6850
                               joshua.krumholz@hklaw.com

                               R. David Donoghue
                               Steven E. Jedlinski
                               131 South Dearborn Street
                               30th Floor
                               Chicago, IL 60603
                               Tel: (312) 263-3600
                               Fax: (312) 578-6666
                               david.donoghue@hklaw.com
                               steven.jedlinski@hklaw.com

                               *Attorneys for Plaintiffs-Appellant*

ii

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................... iii

TABLE OF AUTHORITIES ...................................................... v

ABBREVIATIONS AND CITATIONS ........................................ vii

STATEMENT OF RELATED CASES ......................................... ix

JURISDICTIONAL STATEMENT .............................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................... 2

STATEMENT OF THE CASE ................................................... 3

STATEMENT OF FACTS ........................................................ 5

SUMMARY OF THE ARGUMENT ........................................... 13

ARGUMENT ..................................................................... 16

I.   Standard of Review .................................................... 16

     A.   The Grant of Summary Judgment is Reviewed *De Novo* ......... 16

     B.   Obviousness is a Conclusion of Law and is Reviewed *De Novo* ..... 16

II.  The District Court's Obviousness Analysis Was Deficient for Failing
     to Conduct the Required *Graham* Factor Analysis ......................... 18

     A.   The District Court's Opinion is Devoid of the Factual Findings
          Necessary for a Proper *Graham* Factors Analysis .................... 18

          1.   The District Court Failed to Determine the Level of Ordinary
               Skill in the Art ...................................................... 21

          2.   The District Court Fell Prey to Hindsight Bias and Failed to
               Consider Meyer's Evidence of Secondary Considerations of
               Nonobviousness ..................................................... 21

     B.   The District Court Adopted Dicta from the Concurrence that
          Lacks Sufficient Analysis to Invalidate the Patents .................. 28

III. Genuine Disputed Material Facts Precluded Summary Judgment of
     Obviousness ........................................................... 29

     A.   The District Court Committed Reversible Error by Resolving the
          Dispute Over the Dimensions of the Bodum 3-Cup French Press
          Container in Favor of Bodum ......................................... 30

B.   The District Court Committed Reversible error by Resolving the Dispute Over the Difference Between the Prior Art and Claimed Invention in Favor of Bodum, the Movant ..............................................32

C.   The District Court Committed Reversible Error by Failing to Acknowledge the Dispute Over the Level of Ordinary Skill in the Art ........................................................................................................36

IV.  The District Court Committed Error By Not Considering Every Element of Each Claim ..................................................................37

A.   No Claim-By-Claim Analysis ..................................................37

B.   The District Court Erred by Invalidating All Claims, Even Dependent Claims of the Patents Without Independent Analysis............38

CONCLUSION ............................................................................................39

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

Supreme Court Opinions

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................16
*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ............................................................................... 17, 18
*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ....................................................... 17, 19, 26, 33

Appellate Court Opinions

*Advanced Display Sys., Inc. v. Kent State Univ.*,
    212 F.3d 1272 (Fed. Cir. 2000).......................................................... 17, 19
*Cable Elec. Prods., Inc. v. Genmark, Inc.*,
    770 F.2d 1015 (Fed. Cir. 1985)...............................................................24
*Callaway Golf Co. v. Acushnet Co.*,
    576 F.3d 1331 (Fed. Cir. 2009).................................................................33
*Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*,
    807 F.2d 955 (Fed. Cir. 1986)................................................... 18, 21, 37
*Dana Corp. v. Am. Axle & Mfg., Inc.*,
    279 F.3d 1372 (Fed. Cir. 2002)................................................................38
*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009)................................................................22
*Dow Jones & Co. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010)......................................................... 32, 33
*Ecolochem, Inc. v. S. Cal. Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000).................................................................26
*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
    620 F.3d 1287 (Fed Cir. 2010)..................................................................16
*Honeywell Int'l, Inc. v. United States*,
    609 F.3d 1292 (Fed. Cir. 2010)..................................................................17
*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008).................................................................26
*Innovention Toys, LLC v. MGA Entm't, Inc.*,
    637 F.3d 1314 (Fed. Cir. 2011)................................................................21
*Jones v. Hardy*,
    727 F.2d 1524 (Fed. Cir. 1984)................................................................18
*Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*,
    367 F.3d 1381 (Fed. Cir. 2004).................................................................37

*MeadWestVaco Corp v. Rexam Beauty Closures, Inc.*,
   731 F.3d 1258 (Fed. Cir. 2013).................................................................37
*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
   690 F.3d 1354 (Fed. Cir. 2012)........................................................... 28, 29
*Mintz v. Dietz & Watson, Inc.*,
   679 F.3d 1372 (Fed. Cir. 2012)........................................................... 20, 27
*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
   139 F.3d 877 (Fed. Cir. 1998).............................................................. 17, 18
*MySpace, Inc. v. GraphOn Corp.*,
   672 F.3d 1250 (Fed. Cir. 2012).................................................................19
*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
   520 F.3d 1358 (Fed. Cir. 2008).................................................................26
*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
   701 F.3d 698 (Fed. Cir. 2012)...................................................... 16, 28, 37
*Plantronics, Inc. v. Aliph, Inc.*,
   724 F.3d 1343 (Fed. Cir. 2013)....................................................... passim
*Ruiz v. A.B. Chance Co.*,
   234 F.3d 654 (Fed. Cir. 2000)......................................................... passim
*Simmons Fastener Corp. v. Ill. Tool Works, Inc.*,
   739 F.2d 1573 (Fed. Cir. 1984).................................................................20
*Sys. Div., Inc. v. Teknek LLC*,
   59 Fed. App'x 333 (Fed. Cir. 2003) ..........................................................38
*Tokyo Keiso Co., Ltd. v. SMC Corp.*,
   307 Fed. App'x 446 (Fed. Cir. 2009) ................................................. 31, 38
*TriMed, Inc. v. Stryker Corp.*,
   608 F.3d 1333 (Fed. Cir. 2010)........................................................... 19, 27
*Unigene Labs., Inc. v. Apotex, Inc.*,
   655 F.3d 1352 (Fed. Cir. 2011).................................................................29

Statutes

35 U.S.C. § 103 ........................................................................... 17, 32, 37

Rules

Fed. R. Civ. P. 56(a) ...............................................................................16
Fed. R. Civ. P. 56(c) ...............................................................................16

## <u>ABBREVIATIONS AND CITATIONS</u>

**Parties:**

"Meyer" shall mean Meyer Intellectual Properties Limited and Meyer Corporation, U.S. collectively.

"Bodum" shall mean Bodum, Inc.

"Parties" shall mean Meyer and Bodum collectively.

**Defined Terms:**

"The '087 Patent" shall mean U.S. Patent No. 5,780,087 entitled "Apparatus and Method for Frothing Liquids."

"The '122 Patent" shall mean U.S. Patent No. 5,939,122 entitled "Method for Frothing Liquids."

"Patents" shall mean the '087 Patent and the '122 Patent collectively.

"Brady" shall mean Frank Brady, the sole inventor of the Patents.

"Ghidini Reissue Patent" shall mean U.S. Patent No. RE37,137 which is a re-issue of U.S. Patent No. 5,580,169 entitled "Milk jug with froth-forming device for making 'Cappuccino' and the like" to Ghidini.

"Bodum 3-Cup French press" shall mean the Bodum CHAMBORD 3-cup French press.

"Opinion" shall mean *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06 Civ 06329 (N.D. Ill. April 7, 2014) (D.I. 323).

"Fed. Cir. Op." shall mean *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354 (Fed. Cir. 2012).

"2011 Appeal" shall mean *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 2011-1329, appeal from the United States District Court for the Northern District of Illinois.

"Accused Milk Frothers" shall mean the CHAMBORD Frother Model No. 1964, the AERIUS Frother Model No. 1364, and the SHIN BISTRO Frother Model No. 10492.

**Citations:**

"(JA2_____.)" shall mean citation to the Joint Appendix on appeal.

"(JA2_____ ¶__.)" shall mean citation to pleadings with paragraph numbering.  The paragraph number is cited following the "¶" symbol.

"(JA2_____:__-__.)" shall mean citation to testimony or hearing transcripts.  The transcript lines are cited immediately following the Joint Appendix page citation.

"JA2_____c__:__-__.)" shall mean citation to the Patents.  Specific column and line numbers are cited immediately following the Joint Appendix page citation.

## STATEMENT OF RELATED CASES

There was one previous appeal to this Court from the same civil action from which this appeal arises, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, case number 11-1329. The Honorable Kathleen M. O'Malley, Kimberly A. Moore, and Timothy B. Dyk issued the Court's opinion, 690 F.3d 1354, on August 15, 2012. The Honorable Timothy B. Dyk penned a concurring opinion. No other appeal in or from this civil action was previously before this or any other appellate court. This case's underlying district court proceeding, case number 06-CV-6329, is pending in the Northern District of Illinois and will be directly affected by this Court's decision in this appeal.

Meyer is not aware of any other action pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# JURISDICTIONAL STATEMENT

1.    The District Court had subject matter jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

2.    This Court had jurisdiction over the 2011 Appeal pursuant to 28 U.S.C. § 1295(a)(1).

3.    On remand in 2012, the District Court retained subject matter jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

4.    This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court committed reversible error by failing to conduct the necessary *Graham* obviousness analysis, including failing to define one of ordinary skill in the art, and failing to consider Meyer's evidence of teaching away and copying before finding the Patents invalid as obvious?

2.     Whether the District Court erred by granting Bodum summary judgment of obviousness despite Meyer's evidence of disputed questions of material fact, including a dispute regarding whether Bodum's prior art demonstrated the required two-to-one height-to-diameter ratio?

3.     Whether the District Court's wholesale invalidation of the Patents without performing an analysis as to each claim of the Patents requires reversal of the District Court's invalidity finding?

## **STATEMENT OF THE CASE**

In 2006, Meyer filed a complaint in the United States District Court for the Northern District of Illinois alleging that Bodum directly infringed, induced and/or contributed to the infringement of U.S. Patent Nos. 5,780,087 and 5,939,122. (JA20033.)  In 2007, Meyer amended its complaint to add allegations of willful infringement.  (JA20036-7.)  The District Court granted summary judgment that certain versions of Bodum's Accused Products infringed the Patents.  (JA20096; JA20122.)  After a jury trial, judgment was entered against Bodum on February 16, 2011, holding that the Patents were not invalid, awarding Meyer its full damages demand, and finding Bodum's infringement willful.  (JA20165; JA20047.)

On appeal, this Court reversed the District Court's grant of summary judgment, reversed the District Court's grant of motions *in limine* precluding certain evidence and testimony from trial, vacated the District Court's denial of Bodum's motion for JMOL, vacated the District Court's holding the case exceptional, and remanded the case back to the District Court on August 15, 2012. Fed. Cir. Op. at 1358-59.

On remand, Bodum moved for summary judgment that the Patents were invalid due to obviousness under 35 U.S.C. § 103.  (JA20189-90.)  Meyer moved for summary judgment of Bodum's infringement of the Patents and for a finding of no-inequitable conduct.  (JA20053.)  The District Court granted Bodum's summary

3

judgment motion and denied Meyer's motion as moot.  (JA20010.)   On April 7,

2014, the District Court entered final judgment declaring the Patents invalid in

their entireties.  (JA20001.)

## STATEMENT OF FACTS

### A. Meyer Acquires the Patents

Meyer is the largest cookware distributor in the United States. Since its start in the United States in 1981, Meyer has been a pioneer in the cookware industry. In 2005, Meyer acquired the rights in the Patents from Brady when it acquired his housewares company. (JA20679 ¶ 13.)

In September 1996, Brady applied for the '087 Patent claiming an inventive method of frothing milk using aeration rather than steam. (JA20678-9 ¶ 10.) Brady later filed a continuation of the '087 Patent that issued as the '122 Patent. (JA20678 ¶ 9.) Generally, the independent claims commonly claim four main steps:

1. providing a container;

2. pouring liquid (e.g., milk) into the container;

3. introducing a plunger that includes at least a rod and plunger body with a screen; and

4. pumping the plunger to aerate the liquid (e.g. to create froth).

(JA20679 ¶ 11.) However, the claims of the Patents have varying scope and there are numerous limitations outside of these four general limitations. Those additional limitations include, for example: the container has a height-to-diameter aspect ratio of at least two-to-one (JA20019c5:22-6:8 (claim 1 of the '087 Patent);

JA20027c5:25-43, c6:21-38 (claims 1, 10 of the '122 Patent); JA20028c7:16-33, c8:7-23 (claims 19, 23 of the '122 Patent)); pumping the plunger less than or equal to twenty times (JA20019c6:13-17, c6:26-30 (claims 4, 7 of the '087 Patent); JA20027c5:48-49, c6:43-44 (claims 4, 13 of the '122 Patent); JA20028c8:5-6, c8:28-29 (claims 22, 26 of the '122 Patent)); the plunger body having feet-like protrusions (JA20019c6:18-23 (claim 5 of the '087 Patent); JA20027c5:50-57, c5:60-6:10, c6:45-52 (claims 5, 7, 14 of the '122 Patent); JA20027c6:55-JA20028c7:5 (claim 16 of the '122 Patent)); the screen being made of wire mesh (JA20019c6:24-25 (claim 6 of the '087 Patent); JA20027c5:58-59, c6:53-54 (claims 6, 15 of the '122 Patent)); the top plate having a spring biased against the container (JA20019c5:22-6:8, c6:18-23 (claims 1, 5 of the '087 Patent); JA20027c5:50-57, c6:45-52 (claims 5, 14 of the '122 Patent)); and the plunger body including a means that ensures substantially no liquid passes between the circumference of the plunger body and the inside wall of the container (JA20027c5:25-43, c6:14-20, c6:21-38 (claims 1, 9, 10 of the '122 Patent); JA20028c7:9-15, c7:16-33, c8:7-23 (claims 18, 19, 23 of the '122 Patent)). In all, the '087 Patent has seven method claims, two of which are independent, and the '122 Patent has twenty six method claims, six of which are independent. (JA20019; JA20027-28.)

## B. Bodum's Accused Products

Bodum is a member of a small group of related companies that design and sell products directed generally to housewares, including coffee makers, tea makers, frothers, and tabletop, glassware and kitchen products. (JA21441:4-21442:9; JA21447:19-21448:8; JA21336-9.)

Around 1994, Bodum began selling non-electric milk frothers. (JA21336-9; JA21497:18-22.) Significantly, Bodum's original milk frothers were short and squat devices, with height-to-diameter ratios far below two-to-one. In 1999, Bodum significantly departed from the design of its first line of frothers using a container that was taller and narrower, much like that of the embodiments illustrated in the Patents. (JA20679 ¶ 17; JA20680 ¶ 21; JA20682 ¶ 32; JA21458:23-60:2; JA20113-5; JA21344.)

## C. Relevant 2006-2011 District Court Proceedings

In 2009, the District Court granted Meyer summary judgment that Bodum induced infringement of the Patents through sales of certain versions of Bodum's milk frothers. (JA20096; JA20122.) The case proceeded to a jury trial, at the conclusion of which the jury found Meyer's Patents not invalid, awarded Meyer its full damages demand, and held Bodum's infringement willful. (JA20165; JA20047.) The District Court ruled the case was exceptional and awarded Meyer its attorney fees. (JA20048.) Bodum then appealed. (JA20183; JA20184-0188.)

7

## D. The 2011 Appeal

In the 2011 Appeal, Bodum presented five issues for review by this Court.[1] During the briefing and argument of these issues on appeal, there was no obviousness analysis of the Patents or consideration of Meyer's expert report regarding the validity of the Patents—let alone a claim-by-claim analysis or consideration of the *Graham* factors including secondary considerations. (JA21091-165; JA21166-245; JA21246-1287.)

This Court reversed the District Court's grant of summary judgment of infringement, requiring that Meyer provide evidence of direct infringement, and reversed the District Court's grant of the certain motions *in limine* that precluded Bodum from introducing particular evidence and testimony at trial related to Bodum's invalidity case. Fed. Cir. Op. at 1379. The case was remanded to the District Court for further proceedings. *Id.* Although the validity of the Patents was not a subject of Bodum's appeal, a concurrence opined that the Patents should be

---

[1] "(1) [G]ranting summary judgment in favor of Meyer on infringement; (2) granting Meyer's motions *in limine* precluding Bodum from presenting certain prior art and testimony at trial; (3) denying Bodum's motion for JMOL that Bodum did not willfully infringe the patents-in-suit; (4) enhancing damages and awarding attorney fees in Meyer's favor; and (5) denying Bodum's renewed motion for JMOL and motion to alter the court's infringement decisions." (Fed. Cir. Op. at 1358-59.)

held invalid due to obviousness in view of the Ghidini Reissue Patent and unspecified prior art French press coffee makers.  Fed. Cir. Op. at 1379-80.

### E. District Court Proceedings Following Remand

Upon remand, the parties each moved for summary judgment—Bodum regarding invalidity and Meyer regarding Bodum's infringement and that there could be no inequitable conduct.  (JA20189-191; JA20053; JA20754-760.)

### 1. Bodum's Obviousness Summary Judgment Motion

While Bodum's summary judgment motion was based upon several alleged obviousness combinations of prior art, the District Court's Opinion, which invalidated every claim of the Patents, relied upon just one combination of two references, the Bodum 3-Cup French press and the Ghidini Reissue Patent. (JA20008-9.)

### a. Bodum 3-Cup French press

The Bodum 3-Cup French press is a device used to brew coffee by effectively separating coffee grounds from hot water.  (JA20932-33 ¶ 21.)  During prosecution, the Patent Office considered numerous French presses as potential prior art, although not the Bodum 3-Cup French press in particular.  (JA20878; JA20925 ¶ 1.)  The Bodum 3-Cup French press includes a glass container and a plunger assembly with a spring that biases a screen against the inside wall of the container separating the coarse coffee grounds from the hot water.  (*Id.*; JA21344-45.)  According to the instructions accompanying the Bodum 3-Cup French press,

the user is to "press down very gently" in a single downward movement and "always use coarse ground coffee" to ensure that no coffee grounds migrate around the body of the plunger.  (JA20932-33 ¶ 21.)   Bodum itself expressly warned that the design of its coffee press was not suitable for use as a milk frother:

> Never use the normal coffee maker for frothing milk as you will scratch the glass and the coffee maker is not safe for using anymore.

(JA20958-9.)  The Bodum 3-Cup French press's container includes a spout that allows the user to pour brewed coffee out of the container.  (JA21344; JA20933-34 ¶ 23.)   According to confidential engineering drawings that Bodum claims represent the container of its Bodum 3-Cup French press, the Bodum 3-Cup French press includes a .4 liter container with the following dimensions:

- Inside Diameter (width): 64 mm
- Outer Diameter (width): 68 mm
- Exterior Height (total): 130 mm
- Interior Height (to spout): 118.2 mm

(JA20215 ¶ 35; JA20373-0378.)   However, the record is unclear as to the true dimensions of the container of the Bodum 3-Cup French press that was publicly available and could be considered as prior art.  Bodum's confidential engineering drawings state that the volume of the container was .4 liters.  (JA20913 ¶ 49;

JA20373-78.)  On the other hand, Bodum's public catalogs identify that the volume of the container was only .35 liters.  (JA20913 ¶ 49; JA20317-66.)

### b.  Ghidini Reissue Patent

During prosecution of the Patents, the examiner issued both of the Patents **<u>after</u>** considering U.S. Patent No. 5,580,169, the underlying patent to the Ghidini Reissue Patent, along with numerous French presses.  (JA20878; JA20925 ¶ 1.) The Ghidini Reissue Patent discloses a container body, a lid, a handle, a plunger element with spoke-like arms, and a mesh.  (JA21342.)

The Ghidini Reissue Patent's plunger element includes a "disk-like body [that] flexes during a reciprocating motion of [the] plunger element . . . ." (JA21343c3:12-14.)  The tapering spokes of the plunger element "provide flexibility on the outer portion of the disk-like body, further increasing the inclusion of air particles inside the liquid."  (JA21342c2:52-54.)  During use, the disk-element is vigorously reciprocated through the liquid, flapping the disk-like body to aerate the liquid, allowing liquid to flow between the disk-like body and the container.  The plunger element also includes a number of recesses to allow fluid to flow around the plunger element, in addition to being forced through the interior mesh.  (JA21342c2:31-39.)

The Ghidini Reissue Patent does not disclose a rigid plunger with a spring biasing mesh against the inside container wall.  (JA21340-3.)  And, the Ghidini

11

Reissue Patent fails to disclose a container with a height-to-diameter ratio of at least two-to-one. (*Id.*)

# SUMMARY OF THE ARGUMENT

The District Court's obviousness Opinion is devoid of meaningful analysis. The lack of analysis creates layers of error, each one requiring this Court reverse the obviousness finding and remand the case for further proceedings before the United States District Court for the Northern District of Illinois.

First, the District Court's Opinion evidences no consideration, much less any analysis, of the *Graham* factors including the secondary considerations of nonobviousness raised by Meyer. The *Graham* factors are a critical protection against hindsight bias. Failing to analyze them is a fatal flaw requiring reversal and remand. Critically, Bodum itself taught away from using its Bodum 3-Cup French press to froth milk. Bodum warned: "Never use the normal coffee maker for frothing milk as you will scratch the glass and the coffee maker is not safe for using anymore." Meyer also presented evidence that Bodum copied the Patents. Bodum switched the carafes for its milk frothers from short, squat containers to containers embodying the Patents' claimed two-to-one height-to-diameter ratio shortly after seeing Brady's milk frothers at a trade show. Either of these secondary considerations, alone, evidence the Patents' nonobviousness, and the District Court's failure to address either one in its Opinion requires this Court to reverse the obviousness finding.

13

Second, the District Court committed reversible error by merely invoking the words "common sense" to explain combining Bodum's 3-Cup French press with the Ghidini Reissue Patent, without any record support showing any teaching, suggestion or motivation, and without even resolving the parties' dispute regarding the knowledge that would be possessed by a person of ordinary skill in the art. Even if it is excusable that Meyer's proof of secondary of considerations were disregarded—which it is not—the District Court's bare reliance on "common sense," alone, warrants reversal and remand.

Third, the District Court's Opinion ignores disputed material facts regarding the disclosure of the alleged prior art references, each of which warrant reverse and remand. The parties dispute whether Bodum's 3-Cup French press meets the two-to-one height-to-diameter ratio. Each party measures the container differently. The District Court ignored that dispute in its Opinion. Even though it invalidates each claim of the Patents, the District Court completely ignored elements added by the various independent claims and dependent claims. For example, the District Court's Opinion does not consider the claims, including independent claims, that have "feet-like protrusions" extending from the bottom of the plunger, a feature not found in any prior art reference.

Fourth, the Opinion should be reversed and remanded because it failed to consider each claim of the Patents individually. Each claim is separately presumed

to be valid.  This Court requires that invalidity be decided on a claim-by-claim basis and that in doing so, a district court consider every claim element.  The District Court substituted the required analysis for reliance on three sentences from the concurring opinion of this Court that opines without analysis, in dicta, that the Patents should be held obvious.  Summary statements in dicta cannot substitute the rigorous, element-by-element and claim-by-claim analysis required by this Court.

Any one of these issues requires reversal and remand.  Considering all four issues together, it is overwhelming that the District Court's obviousness determination must be reversed and the case remanded for further proceedings in order to allow a jury to try these issues.  Furthermore, Bodum's evidence even viewed without Meyer's evidence (which must be considered) fails to provide clear and convincing evidence suffice to overcome the Patents presumption of validity.

# ARGUMENT

## I. STANDARD OF REVIEW

### A. The Grant of Summary Judgment is Reviewed *De Novo*

The District Court's summary judgment decision is owed no deference. *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1353 (Fed. Cir. 2013) (citing *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012)). Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *OSRAM Sylvania, Inc*, 701 F.3d at 704. And the court must credit all of the non-movant's evidence and draw all justifiable inferences in the movant's favor. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *OSRAM Sylvania, Inc*, 701 F.3d at 704.

### B. Obviousness is a Conclusion of Law and is Reviewed *De Novo*

Whether the claims of a patent would have been obvious to one of ordinary skill in the art at the time of invention "is a question of law based on underlying questions of fact." *Plantronics, Inc. v. Aliph, Inc* at 1353 (citing *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1298 (Fed Cir. 2010)). This Court reviews a district court's obviousness holding without deference. *E.g.*, *Id.*

"[A] district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness

16

present no genuine issue of material facts." *Plantronics, Inc.*, 724 F.3d at 1353 (internal quotation omitted). In performing its analysis, "[t]his court remains cognizant of the statutory presumption of validity" of issued patents. *See, e.g.*, *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998) (citing 35 U.S.C. § 282).

When making a determination of obviousness under 35 U.S.C. § 103, the court examines the underlying factual findings for clear error. *See Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1297 (Fed. Cir. 2010). The underlying factual findings are: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) secondary considerations. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)). Secondary considerations, such as teaching away or copying, are utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. Such objective indicia of non-obviousness "may often be the most probative and cogent evidence." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000).

If there are no underlying factual disputes with respect to the obviousness analysis, this Court reviews "whether summary judgment of invalidity is correct by applying the law to the undisputed facts." *Plantronics, Inc.*, 724 F.3d at 1353

(internal quotation omitted). "If facts remain in dispute, this court weighs the materiality of the dispute, i.e., whether resolution of the dispute one way or the other makes a difference to the final determination of obviousness." *Monarch Knitting Mach. Corp.*, 139 F.3d at 881.

## II. THE DISTRICT COURT'S OBVIOUSNESS ANALYSIS WAS DEFICIENT FOR FAILING TO CONDUCT THE REQUIRED *GRAHAM* FACTOR ANALYSIS

### A. The District Court's Opinion is Devoid of the Factual Findings Necessary for a Proper *Graham* Factors Analysis

The District Court's failure to consider the *Graham* factors, let alone explain its analysis of them, is a fatal flaw requiring reversal and remand. *See Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed. Cir. 1984) ("*Graham* was cited but its guidance was not applied, resulting in the application of hindsight and speculation."); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000) (citing *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986)). The District Court merely cites to *Graham v. John Deere Co.* This alone, without any analysis, fails to support a grant of summary judgment.

The District Court's Opinion failed to discuss even one of the *Graham* factors, including determining the level of ordinary skill in the art and considering Meyer's evidence of secondary considerations—teaching away and copying. While each *Graham* factor need not be expressly discussed by the District Court, a record such as this one that fails to analyze even one *Graham* factor does not

adequately support summary judgment. *See, e.g.*, *KSR*, 550 U.S. at 427 (explaining the *Graham* factors lay the framework for an objective analysis for determining obviousness under 35 U.S.C. § 103).

In *TriMed*, this Court explained that the record *must* indicate the district court considered evidence of secondary considerations. *TriMed*, at 1343 (citing *Ruiz*, 234 F.3d at 667). The *TriMed* district court erred by failing to provide a reasoned basis to support its grant of summary judgment, including failing to consider evidence of secondary considerations. *Id.* Similar to *TriMed*, in this case the District Court failed to even acknowledge, let alone consider and analyze, the evidence Meyer submitted regarding secondary considerations. (*See generally* Opinion.) This is clear error. *TriMed*, at 1343.

In *MySpace*, the Court held enumerated *Graham* findings were not required because the record was sufficiently clear that they were considered. *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1263 (Fed. Cir. 2012) (explaining each *Graham* factor does not need to be enumerated "[w]here the record adequately supports the judgment."). But, in *MySpace* the underlying facts of invalidity were not in dispute. *MySpace* at 1257. Meaning there were no disputes of what "may often be the most probative and cogent evidence" of nonobviousness. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000) (citing *Stratoflex, Inc. v Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)).

Similar to the lack of analysis here, in *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, this Court held it was clear error for the district court to invalidate a patent for obviousness without considering evidence of secondary considerations. 739 F.2d 1573, 1575 (Fed. Cir. 1984) (reversing the district court's obviousness holding because the district court only commented that, "no amount of commercial success can save [the invention]."). Acting with less regard than the district court in *Simmons Fastener Corp.*, here, the District Court did not opine *at all* on *any* of the secondary consideration evidence Meyer presented. (*See generally* JA20002-10.)

A *Graham* analysis is required because it prevents hindsight bias, a safeguard particularly important for less technologically complex inventions, such as the ones at issue in this action. *Ruiz* at 664. Technology is not obvious simply because it is easy to understand, and the *Graham* analysis protects against that hindsight bias. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012).

Reviewing the District Court's opinion, one can only conclude that the District Court failed to make any of the requisite *Graham* factual findings, if it considered them at all. Thus, this Court has no basis for reviewing the District Court's legal determination and must vacate the court's summary judgment of obviousness.

20

1.    **The District Court Failed to Determine the Level of Ordinary Skill in the Art**

The factual determination of the level of ordinary skill in the art is an integral part of the *Graham* analysis. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1323 (Fed. Cir. 2011); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666 (Fed. Cir. 2000)). "Without [a determination of the level of ordinary skill in the art], a district court cannot properly assess obviousness because the critical question is whether a claimed invention would have been obvious at the time it was made to one with ordinary skill in the art." *Custom Accessories*, 807 F.2d. at 962 (internal citation omitted). The District Court failed to define who the person of ordinary skill in the art was; consequently, it is unclear which level was used by the District Court in its analysis. (*See generally* JA20002-10.) This failure constitutes clear error.

2.    **The District Court Fell Prey to Hindsight Bias and Failed to Consider Meyer's Evidence of Secondary Considerations of Nonobviousness**

Meyer offered evidence of secondary considerations—teaching away and copying—that proved nonobviousness, and, at a minimum, created a question of disputed fact regarding obviousness. (JA20887-8; JA20926 ¶¶ 5, 6, 7, 8.)

i.    **The Bodum 3-Cup French press teaches away from the claimed invention**

Bodum's own warning statement regarding the principal reference that the District Court relied upon to invalidate the Patents, expressly taught away from the

21

Patents' claimed invention.  (*See* JA20926 ¶¶ 5, 6; JA20958-0959.)   Prior art

references that teach away from the claimed invention cannot serve to create a

*prima facie* case of obviousness.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek,*

*Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2009).   "A reference may be said to teach

away when a person of ordinary skill, upon reading the reference, would be

discouraged from following the path set out in the reference, or would be led in a

direction divergent from the path that was taken by the applicant." *Id.* at 1327

(internal quotation omitted).   "An inference of nonobviousness is especially strong

where the prior art's teachings undermine the very reason being proffered as to

why a person of ordinary skill would have combined the known elements." *Id.* at

1326.   In *DePuy Spine, Inc.*, this Court affirmed the district court's holding that the

prior art taught away from the claimed invention such that a person of ordinary

skill would have been deterred from combining that reference with another

reference for the purposes of invalidation. *Id.* at 1328.

In this case, Bodum does not merely express a general preference not to use

the Bodum 3-Cup French press to froth milk.  (*See* JA20926 ¶¶ 5, 6; JA20958-

0959.)  Instead, Bodum specifically instructed in a warning statement: "Never use

the normal coffee maker for frothing milk as you will scratch the glass and the

coffee maker is not safe for using anymore." (*See id.*)   In doing so, Bodum

declared it is not only not preferred, but is in fact not safe to froth milk in a coffee

press's container.  (*See id.*)  This is because the plunger of the coffee press is intended to be used as a slow, single plunge device to separate the water and coffee grounds, while frothing milk requires rapid successive plunges that would damage the device, making it unsafe.  (*See id.*)

Bodum's own warning statement undermines the very reason why a person of ordinary skill would have combined the known elements, evidencing nonobviousness.  Bodum summarily addressed Meyer's teaching away evidence by arguing "[t]he statement clearly demonstrates that the structure of a French press can be used to froth milk and was known by others to be used to froth milk." (JA21081.)  But Bodum's argument is disingenuous because Bodum's warning was *never* to use its 3-Cup French press to froth milk, expressly teaching away.  (*See* JA20926 ¶¶ 5, 6; JA20958-59.)  This is the very definition of teaching away, and the District Court's Opinion is devoid of any discussion, let alone consideration, of Meyer's evidence that Bodum taught away from the use of its Bodum 3-Cup French press to froth milk.

### ii.    Bodum copied the Patents

Meyer also presented evidence of Bodum's copying that was not rebutted with substantive arguments by Bodum, nor was it considered by the District Court. (*See* JA20002-10; JA20926 ¶¶ 7, 8; JA21082.)  As this Court has repeatedly noted, wholesale copying provides compelling evidence of nonobviousness. *See, e.g.*,

23

*Specialty Composites*, 845 F.2d at 991. Copying requires evidence of efforts to replicate a specific product that can be demonstrated by "access to, and substantial similarity to, the patented product (as opposed to the patent)." *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985) (*overruled on other grounds by, Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359 (Fed. Cir. 1999)).

Prior to Meyer's Patents, Bodum's product line included manual milk frothers. (JA21003-7.) However, the container used in those milk frothers had significantly different height-to-diameter dimensions than the frothers introduced after the issuance of the Patents. (*Id.*)



**Figure 1:** Bodum's non-electric frother, circa 1994.

After seeing the inventor's commercial embodiment of the Patents at a trade show, Bodum incorporated the claimed at least two-to-one height-to-diameter dimension and feet-like protrusions to the plunger into its new milk frother design. (JA21010:18-11:25; JA21015:13-16:5; JA21018-19.)

 

**Figure 2**: Comparison of Bodum's Version 1 milk frother and Fig. 1 from the Patents. (JA20014; JA21345.)

Accordingly, Bodum deliberately copied the Patents' teachings of the benefits of frothing milk in a container with a two-to-one height-to-diameter dimension and feet-like protrusions. Such wholesale copying is evidence of the

Patents' non-obviousness. The District Court committed clear error by failing even to consider Meyer's evidence of copying. (*See generally* JA20002-10.)

### iii. Hindsight bias tainted the District Court's Opinion

Impermissible hindsight bias is the only discernible reason to combine the disparate teachings of a French press with those of milk frothers, especially in view of the secondary considerations. (JA20886.) By failing to consider the secondary considerations of nonobviousness, the District Court fell prey to hindsight.

It is impermissible to use "hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention." *Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008); *see also KSR*, 550 U.S. at 421. An absence of specific motivation to combine prior art references, especially with evidence of prior art teaching away from the claimed invention, "is a critical omission in the district court's obviousness analysis." *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1374 (Fed. Cir. 2000). The Federal Circuit still applies a flexible teaching, suggestion, motivation ("TSM") test as the "primary guarantor against a non-statutory hindsight analysis." *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364-65 (Fed. Cir. 2008) (citation omitted). When the reasoning behind the motivation to combine prior art references is absent, it cannot be assumed that the person of ordinary skill in the art could use common sense to

do so. *Plantronics, Inc.*, 724 F.3d at 1354. Although a district court may resort to common sense in determining obviousness, common sense must be supported in the record, it cannot just be assumed. *Id.* at 1354 ("Although the obviousness analysis is somewhat flexible, a district court's conclusions with respect to obviousness must find support in the record.").

In *TriMed*, the defendant attempted to avoid genuine disputes of fact by arguing the invention would have been a common sense solution to a known problem. 608 F.3d at 1342. This Court rejected that reasoning, emphasizing that although an obviousness analysis "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion," the district court erred by relying on such without sufficient clarity for review. *Id.* at 1342-43 (internal quotation omitted).

Similar to *TriMed*, here, the District Court committed clear error by merely invoking the words "common sense" without any record support showing the knowledge would be possessed by a person of ordinary skill in the art. *Mintz*, 679 F.3d at 1377. Indeed, the District Court could not have done so, as the District Court never ruled upon the parties' dispute regarding the level of skill of the person of ordinary skill in the art. *See infra.* Section III.C.

**B.**    **The District Court Adopted Dicta from the Concurrence that Lacks Sufficient Analysis to Invalidate the Patents**

Even if the District Court had considered the *Graham* factors, its Opinion lacks any evidence that it did so.  (*See generally* JA20002-10.)  The record is deficient, and it is not this Court's "role to scour the record and search for something to justify a lower court's conclusions, particularly at the summary judgment stage." *OSRAM*, 701 F.3d at 707. "[T]his court must be furnished sufficient findings and reasoning to permit meaningful appellate scrutiny." *Id.* (citation and internal quotation marks omitted).

Reviewing the District Court's Opinion, one can only conclude that the District Court failed to make any of the requisite *Graham* factual findings, if it considered them at all. Thus, this Court has no basis for reviewing the District Court's legal determination and must vacate the court's summary judgment of obviousness, for at least that reason.

Instead, the District Court replaced the required obvious analysis with dicta from this Court's concurring opinion.  Relying principally upon a three sentence quote from this Court's concurrence from the 2011 Appeal, the District Court concluded that the cited prior art rendered the Patents obvious without substantive analysis.  (JA20009.)  This is clear error.  The quoted language from the concurrence opined on an issue that was not before the Federal Circuit: the validity of the Patents. Fed. Cir. Op. at 1379.  In the 2011 Appeal, Bodum did not appeal

28

the validity of Patents. *Id.* at 1358. Bodum appealed, in relevant part, the exclusion of certain testimony and prior art references from trial. *Id.* Therefore, the parties had not briefed the validity analysis of the Patents for this Court and the parties never addressed validity at oral argument before this Court. The concurrence provides an opinion on obviousness and the simplicity of the claimed inventions, but like the District Court, made no *Graham* findings or statements indicating it considered Meyer's evidence of secondary considerations. *See Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360-61 (Fed. Cir. 2011) ("The statutory criterion is whether the invention would have been obvious to persons of ordinary skill at the time of the invention, not whether it is sufficiently simple to appear obvious to judges after the discovery is finally made." (internal quotation omitted)). The District Court's indiscriminate reliance upon the concurring opinion from the 2011 Appeal was improper. The improper reliance on dicta and the failure to conduct the *Graham* analysis is clear error, either of which would require reversal of the District Court's invalidity decision.

## III.  GENUINE DISPUTED MATERIAL FACTS PRECLUDED SUMMARY JUDGMENT OF OBVIOUSNESS

The District Court erred by granting summary judgment because Bodum failed to prove by clear and convincing evidence that no reasonable jury could find Meyer's Patents valid. *Plantronics, Inc.*, 724 F.3d at 1353. Bodum did not meet its burden to prove, by clear and convincing evidence, its *prima facie* case for

obviousness because there were numerous disputes of facts material to the obviousness analysis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Plantronics, Inc.*, 724 F.3d at 1353 ("Obviousness must be proved by clear and convincing evidence").

Meyer demanded a jury trial. (JA20033.) Granting summary judgment against Meyer, without considering disputes of material facts, usurps Meyer's right to try those issues before a jury. Meyer's right includes allowing a jury decide the underlying disputed factual questions: the dimensions of the Bodum 3-Cup French press; the differences between the prior art and the claims of the Patents after hearing arguments by Meyer's expert; and the level of ordinary skill in the art. And, the District Court erred by outright ignoring or resolving these disputes of material facts in favor of Bodum.

### A. The District Court Committed Reversible Error by Resolving the Dispute Over the Dimensions of the Bodum 3-Cup French Press Container in Favor of Bodum

The District Court improperly accepted Bodum's disputed assertions as to how one of ordinary skill in the art would measure the height and diameter of the Bodum 3-Cup French press's container and improperly granted summary judgment in favor of Bodum. (JA20881-86.) The District Court even inexplicably admitted that there was a factual dispute regarding the dimensions, and still improperly resolved the dispute in favor of the moving party, Bodum. (JA20008 ("The claims

30

do not specify which ratio is the appropriate one," and "having a height to diameter ration [sic] of at least 2 to 1 under certain measurements.").)

Despite the requirement that factual disputes be resolved in favor of the nonmoving party, the District Court chose to disregard the parties' factual disputes. Fed. R. Civ. P. 56(c); *Plantronics, Inc.*, 724 F.3d at 1353. Had the District Court resolved the dispute in favor of Meyer, the nonmoving party, the District Court would have found the Bodum 3-Cup French press container did not have the claimed at least two-to-one ratio, and denied summary judgment of obviousness. (JA20881-86.) And because the other prior art reference, the Ghidini Reissue Patent, also failed to disclose this limitation (*see generally* JA21340-43), the resolution of this material dispute affects the ultimate determination of obviousness and precludes summary judgment.

Additionally, the District Court improperly opined as to whether the Patents' claimed two-to-one ratio was even important. (JA20008 ("There is no indication of why this ratio is important other than making frothing faster.").) When conducting its invalidity analysis, a court must address each and every limitation of each and every claim. *Tokyo Keiso Co., Ltd. v. SMC Corp.*, 307 Fed. App'x 446 (Fed. Cir. 2009) (holding claim-by-claim analysis is not required if every claim limitation at issue is addressed). It is not for the District Court to decide whether the two-to-one ratio is important, by its very nature of being a claimed element, it

is both important and material. "[E]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims." 35 U.S.C. § 282. Therefore, in order for the Patents to be invalidated, the claimed two-to-one ratio must either be disclosed in a prior art reference or be obvious to one of ordinary skill in the art. The two-to-one ratio was neither disclosed in the prior art, nor obvious to one of ordinary skill in the art. The court committed reversible error by questioning the importance of a claimed element, which admittedly improves frothing, and improperly resolving a dispute of fact in favor of Bodum.

**B.     The District Court Committed Reversible error by Resolving the Dispute Over the Difference Between the Prior Art and Claimed Invention in Favor of Bodum, the Movant**

A genuine issue of material fact exists as to the difference between the cited prior art and the claimed inventions of the Patents, precluding summary judgment. A patent is invalid as obvious only "if the differences between the [claimed] subject matter . . . and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). It is true that in conducting a nonobviousness analysis the prior art need not disclose every element of a claim. *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1349-53 (Fed. Cir. 2010). However, "a patent composed of several elements

is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418.

In *Dow Jones*, this Court affirmed a district court's invalidation of a patent over prior art that did not disclose every element of a claim. *Dow Jones*, 606 F.3d at 1351. But, in that case, the district court's detailed analysis was on the record for this Court to examine. *Id.* The district court expressly discussed why the patent was obvious over prior art that failed to disclose every claimed element. *Id.* Further, the district court addressed the arguments directed at the only secondary consideration argued, market skepticism. *Id.* at 1352.

This case is more akin to *Callaway Golf Co. v. Acushnet Co.*, where the accused infringer framed the claimed invention "as nothing more than a predictable and 'obvious to try' variation of known elements." 576 F.3d 1331, 1339 (Fed. Cir. 2009). This Court affirmed that district court's refusal to overturn a jury's verdict of nonobviousness because, "when viewed in the light most favorable to the verdict, the jury could have reasonably concluded that [the defendant] failed to prove invalidity due to obviousness" by clear and convincing evidence. *Id.*

Here, Meyer's expert, Dr. Albert V. Karvelis, explained in detail why Meyer's Patents are not obvious to one of ordinary skill in the art when viewing the combination of the Ghidini Reissue Patent and Bodum 3-Cup French press. (JA20929-957; JA21555-579.) Karvelis opined that the "disparate aspects of

33

coffee press and milk frother references cannot simply be mixed and matched," and that "[t]here is no motivation or reasoned explanation for a [person of ordinary skill in the art] to combine the teachings of a coffee press with that of a milk frother." (JA20938-39 ¶¶ 35, 38; JA21567 ¶ 49; JA21568 ¶ 51.) Karvelis explained that, according to the Ghidini Reissue Patent, "a flexible plunger element is critical to the operation of frothing milk" because it "allows fluid to flow around [the exterior of the plunger]." (JA20935 ¶ 27; JA20939 ¶ 39.) And, that the "rigid plunger element of the Bodum 3-Cup French press would prevent such operation." (JA20939 ¶ 39.)

Karvelis further opined that the Bodum 3-Cup French press teaches away from the inventions of the Patents through Bodum's express statements on its website and product instructions. (JA21567-68 ¶¶ 48-50.) He expressly noted that a person of ordinary skill in the art "would not have been motivated by the Reissue Ghidini Patent to use the Bodum 3-Cup apparatus to froth milk or to substitute the plunger of the Reissue Ghidini Patent with the filter of the Bodum 3-Cup apparatus." (JA20939 ¶ 39; JA21566 ¶ 42.)

Finally, Karvelis opined that the combination of the Bodum 3-Cup French press and the Reissue Ghidini Patent failed to disclose to one of ordinary skill in the art all limitations of the claims of the Patents. First, neither reference disclosed a container with the claimed at least two-to-one height-to-width aspect ratio.

(JA20938 ¶ 37; JA21567 ¶ 47.)  One of ordinary skill in the art would measure the claimed height-to-width aspect using the dimensions of the container that can hold liquid—the inside diameter and the inner height to the spout.  (JA20933 ¶ 23.)  Second, neither reference disclosed the "feet-like protrusions" of claim 5 of the '087 Patent and of claims 5, 7, 14, and 16 of the '122 Patent.  (JA20938 ¶ 37; JA21567 ¶ 47.)  The District Court Opinion erred by ignoring this opinion from Meyer's expert Karvelis.

As noted by Karvelis, the District Court's only cited obviousness combination, the Ghidini Reissue Patent and the Bodum 3-Cup French press, fails to disclose all elements of the claimed invention of the Patents.  The District Court's Opinion failed to identify where each of these claimed elements—the two-to-one ration and the feet-like protrusions—were found in the Ghidini Reissue Patent or the Bodum 3-Cup French press.

Even if they had been, the District Court must provide an explanation as to why a person of ordinary skill in the art would be led to add these claimed elements.  However, the record lacks any evidence at all on these issues, let alone the required clear and convincing evidence.  Such failure confirms the District Court's error in invalidating the Patents.

**C.    The District Court Committed Reversible Error by Failing to Acknowledge the Dispute Over the Level of Ordinary Skill in the Art**

Compounding the District Court's error in failing to define the level of ordinary skill in the art at all, the District Court also erred by ignoring the factual dispute over the same.  At the 2010 trial, the parties agreed that the person of ordinary skill in the art was defined as "a person with basic familiarity with product design through either an engineering or design education (though not necessarily a degree) or minimal experience of a year in the product design or house wares fields." (JA20158.)  Following remand, Bodum changed its position regarding the level of ordinary skill in the art, creating a divergence between the parties as to the level of ordinary skill in the art.  (JA20920.)  Meyer's expert opined that the level of ordinary skill was the same as previously agreed to before the 2010 trial.  Without analysis, Bodum stated that its expert's higher level of skill, "is substantially the same as the agreed upon standard." (JA21082.)  This discrepancy is material to the obviousness analysis because it is easier to establish obviousness using a higher level of ordinary skill in the art. *Innovention Toys*, 637 F.3d at 1323 ("A less sophisticated level of skill generally favors a determination of nonobviousness, and thus the patentee, while a higher level of skill favors the reverse." (citation omitted)).  Using Bodum's higher, yet **_disputed_**, level of skill in the art improperly favored a finding that the Patents are obvious.

This dispute is material because the obviousness of the Patents has to be viewed from that of one of ordinary skill in the art.  35 U.S.C. § 103.  The dispute over this level, even without other disputes, precludes the possibility of summary judgment.  *OSRAM Sylvania, Inc*, 701 F.3d at 704  (explaining it is the moving party's burden to identify the portions of the record which it believes demonstrates the absence of a genuine issue of material fact and which entitle it to judgment as a matter of law).  Bodum admitted there was a material dispute of fact of the level of skill, and the District Court committed reversible error by failing to both acknowledge the dispute and resolve it in favor of Meyer, the nonmoving party. *Ruiz*, 234 F.3d at 667 (citing *Custom Accessories*, 807 F.2d at 963).

## IV.    THE DISTRICT COURT COMMITTED ERROR BY NOT CONSIDERING EVERY ELEMENT OF EACH CLAIM

The District Court's failure to perform a claim-by-claim analysis, let alone address each claimed element, in its Opinion is reversible error.

### A.    No Claim-By-Claim Analysis

Instead of conducting a claim-by-claim analysis, the District Court only generally discussed certain steps of the Patents.  "Obviousness, like other grounds of invalidity, must be analyzed on a claim-by-claim basis."  *MeadWestVaco Corp v. Rexam Beauty Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013); *Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004) ("The grant of summary judgment of invalidity for obviousness must be done on a claim

by claim basis."). While a specific claim-by-claim discussion is not required, at a minimum, every claim element must be discussed and found in the prior art. *Tokyo Keiso Co., Ltd. v. SMC Corp.*, 307 Fed. App'x 446 (Fed. Cir. 2009) (holding claim-by-claim analysis is not required if every claim limitation at issue is addressed). The District Court performed neither a claim-by-claim analysis nor discussed every claim element of the thirty-three claims in the Patents. Therefore, the District Court erred by granting summary judgment.

## B. The District Court Erred by Invalidating All Claims, Even Dependent Claims of the Patents Without Independent Analysis

The District Court erred by holding the Patents invalid and automatically disposing of the dependent claims. Because "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) *shall be presumed valid independently of the validity of other claims*," it cannot be assumed that claims dependent on an invalid claim are also invalid. *Sys. Div., Inc. v. Teknek LLC*, 59 Fed. App'x 333, 344 (Fed. Cir. 2003) (alteration in original) (quoting 35 U.S.C. § 282). "Section 282 requires an independent analysis of the validity of each claim." *See, e.g., id.* The "[district] court erred in invalidating all of the dependent claims without considering whether the subject matter of the alleged bars met the additional limitations of those claims." *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002). The District Court's incomplete analysis fails to address any one claim specifically, notwithstanding its failure to

38

address the limitations of all of the claims. For example, independent claims 7 and 16 and dependent claim 5 and 14 of the '122 Patent and claim 5 of the '087 Patent, require "feet-like protrusions" on the claimed base plate. (*See* JA20019c6:18-23 (claim 5 of the '087 Patent); JA20027c5:50-57, c5:60-6:10, c6:45-52 (claims 5, 7, 14 of the '122 Patent); JA20027c6:55- JA20028c7:5 (claim 16 of the '122 Patent).) Although it invalidated every claim of the Patents, the District Court never addressed independent claim 7 or 16 of the '122 Patent, claim 5 of the '087 Patent or this element.[2] (*See generally* JA20002-10.) As it did in *Dana Corp.*, this Court should vacate the District Court's determination that the dependent claims of the Patents are invalid, and remand for a reconsideration of validity in light of the presumption of validity. *Dana Corp.*, 279 F.3d at 1377.

## CONCLUSION

The District Court's failure to provide a cognizable *Graham* factor analysis alone requires that the District Court's grant of summary judgment of invalidity be reversed and this case remanded for further proceedings. Even if the District Court had conducted the necessary *Graham* factor analysis, its Opinion should still be

---

[2] Similarly, claim 9 of the '122 Patent, further limits claim 8, requires that the claimed plunger include a means for ensuring that substantially no liquid passes between the circumference of the plunger and the container wall. (*See* JA20027c6:14-20.) As with the feet-like protrusions, the District Court never addressed the new element of claim 9. (*See generally* JA20002-10.)

reversed based upon the District Court's unsupported conclusions, refusal to acknowledge disputed material facts, and its failure to address every claim limitation prior to invalidating the Patents. These reasons are more than sufficient reason to find the District Court committed reversible error. Granting summary judgment to Bodum on obviousness was contrary to Fed. R. Civ. P. 56(a), contrary to the duty to view all evidence on summary judgment in light most favorable to Meyer, contrary to the statutory presumption of the Patents' validity, and contrary to the requirement that Bodum produce clear and convincing evidence that the Patents are obvious to one of ordinary skill in the art. For at least these reasons, Meyer respectfully requests that the District Court's grant of summary judgment of invalidity be reversed and this case remanded.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Dated: July 14, 2014

/s/ *R. David Donoghue*

Joshua C. Krumholz
10 St. James Avenue
11th Floor
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850
joshua.krumholz@hklaw.com

40

R. David Donoghue
Steven E. Jedlinski
131 South Dearborn Street
30th Floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312) 578-6666
david.donoghue@hklaw.com
steven.jedlinski@hklaw.com

*Attorneys for Plaintiffs-Appellant*

# ADDENDUM

## <u>ADDENDUM TABLE OF CONTENTS</u>

| <u>Document</u> | <u>Page</u> |
|---|---|
| 1.  Judgment of the Honorable Harry D. Leinenweber, entered April 7, 2014 (D.I. 324) | JA20001 |
| 2.  Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion to Strike and Motion for Summary Judgment, entered April 7, 2014 (D.I. 323) | JA20002 |
| 3.  Minute Entry Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion to Strike and Motion for Summary Judgment entered April 7, 2014 (D.I. 322) | JA20011 |
| 4.  U.S. Patent No. 5,780,087 | JA20012 |
| 5.  U.S. Patent No. 5,939,122 | JA20020 |

Case: 14-1472 CASE PARTICIPANTS ONLY Document: 54 19 Filed: 07/54/2014 Page: 07/14/2014

ILND 450 (Rev. Judgment in a Civil Action) Case: 1:06-cv-06329 Document #: 324 Filed: 04/07/14 Page 1 of 1 PageID #:8689

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Meyer Intellectual Properties Limited; and Meyer
Corporation,

Plaintiff(s),

v.

Bodum USA, Inc.,

Defendant(s).

Case No.  06 C 6329
Judge  Harry D. Leinenweber

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☒    other:  in favor of the defendant Bodum USA, Inc.,  and against the plaintiffs Meyer Intellectual
Properties Limited; and Meyer Corporation, U.S.,

---

This action was (check one):

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.
☒ decided by Judge Harry D. Leinenweber on a motion Defendant's Motion for Summary Judgment.


Date:  4/7/2014

Thomas G. Bruton, Clerk of Court

/s/ Wanda Parker , Deputy Clerk

**JA20001**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MEYER INTELLECTUAL PROPERTIES
LIMITED; and MEYER CORPORATION,
U.S.,

Plaintiffs,

v.

BODUM USA, INC.,

Defendant.

Case No. 06 C 6329

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This is a patent case. The Plaintiff, Meyer Intellectual
Properties Limited ("Meyer"), has brought a suit against Bodum USA,
Inc. ("Bodum"), alleging infringement of two of Meyer's patents,
U.S. Patent Nos. 5,780,087 ("the '087 Patent") and 5,939,122 ("the
'122 Patent"). Bodum counterclaimed for declaratory judgment of
non-infringement and invalidity. The case proceeded to trial
before another District Court judge which ended in a verdict for
Meyer for willful infringement and set damages at $50,000. The
trial judge, based on the willfulness finding, trebled the damages
and awarded attorneys' fees. Bodum appealed to the Federal Circuit
which reversed the judgment, based upon a number of the trial
court's pretrial and trial rulings, which it considered erroneous.
Specifically, the Federal Circuit reversed the district court's

decision granting summary judgments that two of Bodum's products infringed Meyer's patents, reversed the trial court's pretrial rulings that precluded Bodum from introducing prior art even though it had been disclosed during discovery, that precluded Bodum's President from testifying as to one of its products as prior art, that precluded Bodum's expert from testifying on the issue of obviousness, that precluded Bodum from introducing any evidence of inequitable conduct, vacated the district court's decision denying Bodum JMOL that it did not willfully infringe, and vacated the district court's decision enhancing damages and awarding attorney fees. Finally, the court remanded the case for further proceedings consistent with its opinion.

Since this case has been the subject of multiple written rulings as well as a 28-page published opinion by the Federal Circuit (*Meyer Intellectual Properties Ltd. v. Bodum, Inc.,* 690 F.3d 1354 (Fed Cir. 2012)), the court will write sparingly on the facts of the case. Essentially the case involves two patents, a continuing application that later became the '122 Patent, and the original patent application, which was the '087 Patent. Both patents share a common specification which provides a method for frothing liquids such as milk. Specifically, the patents relate to "an apparatus and method for frothing, which allows the user to obtain foamy, frothed milk without the use of a complicated steamer device." The claims disclose a four-step method for doing so: (1)

- 2-

providing a container that has a height to diameter aspect ration of 2:1; (2) pouring liquid such as milk into the container; (3) introducing a plunger that includes at least a rod and plunger body with a screen; and (4) pumping the plunger to aerate the liquid.

The inventor of the two patents was Frank Brady ("Brady") who for approximately ten years was an independent sales representative for Bodum, a company that designs and sells housewares products, including coffee makers, milk frothers, and other kitchen products. As CEO of Brady Marketing Company, Inc., Brady marketed and sold a number of Bodum's household products, including Bodum's French Press coffee makers, which used a container and a rod and plunger assembly to brew coffee. Brady testified that he first conceived of using a frother to provide aeration instead of steam in the mid-1990s, and introduced it for sale at a trade show in May 1996. He began selling this product through BonJour, Inc., a company he owned. In May 2005, Brady sold BonJour to Meyer and transferred its intellectual property rights to Meyer, including the '087 and the '122 Patents.

Meyer has accused three of Bodum's milk frothers of infringing the '087 and the '122 Patents. Bodum has moved for summary judgment of invalidity based on obviousness and Meyer has moved for summary judgment of infringement and no inequitable conduct.

- 3-

## II.  THE FEDERAL CIRCUIT OPINION

The pre-trial rulings of the District Court, which were reversed by the Federal Circuit, had limited the universe of prior art solely to the Ghidini Reissue Patent, No. RE 37,137, which described a method for frothing liquids.  The trial court excluded all other references submitted by Bodum, including Bodum's own Bodum 3-Cup French Press Coffee Maker, which consisted of a container using a rod and plunger assembly, and limited it to the Ghidini Reissue Patent, which taught a method for frothing milk using a container with a plunger assembly.  The pretrial rulings also prohibited Bodum's designated expert, Robert John Anders ("Anders"), as well as Bodum's CEO, Jorgen Bodum, from testifying. The latter was expected to testify as a non-expert to describe Bodum's products, its catalogs and drawings depicting the features of its French Press coffee maker which was on sale prior to the application dates for the patents-in-suit.

Essentially the basis for the court's reversals of the trial court pre-trial rulings was its view that the technology involved in this case was "not complex," so that the basis for precluding Anders' expert opinion as "ipse dixit" was incorrect; and that Anders' opinion that the patents-in-suit were obvious to one skilled in the art was based on "common sense," which was appropriate in obvious analysis of a non-technical patent, citing *Perfect Web Techs, Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1329 (Fed

– 4–

Cir. 2009). The court also held that the exclusion of the lay testimony of Jorgen Bodum that the Bodum 3-Cup French Press Coffee Maker was an accurate example of Bodum's product which had been on sale prior to the application for the patents-in-suit, was error. As was the attempt to corroborate Bodum's testimony with drawings and catalogs showing dimensions and the plunger assembly. The court held that this proffered testimony was appropriate for a lay fact witness to give.

### III.  MOTION TO STRIKE ANDERS' UPDATED REPORT

Bodum in its Motion for Summary Judgment has attached an updated expert opinion from Anders that includes two references: the 1916 Belgium Patent No. 384,589 (the Belgian '589 Patent"), which taught how to froth liquids with a container and a plunger, and the Insta-Brewer, a coffee maker, which was similar to the Bodum 3-Cup French Press Coffee Maker but was sold as early as 1964. Meyer has moved, pursuant to Federal Rule of Civil Procedure 26(a), to strike this updated report based on untimeliness and prejudice. It is hard to see how Meyer is prejudiced by the "late" disclosure as the Original Anders Report, which was timely, included both references. Although Anders did not specifically include them in the portion of his report in which he stated his opinion of obviousness, the references were included in his report and were not particularly different from the two that he specifically relied upon (the Bodum 3-Cup French Press Coffee Maker

- 5-

and the Ghidini frother).  The Court does not believe that there is a basis for striking Anders latest report which was filed far more than thirty (30) days prior to trial, and, as conceded by Meyer, the references were, in fact, included in his initial report. Moreover, in his original report he reserved the right to supplement his report and rely on additional documents that came to his attention.  The Motion to Strike is therefore denied.

## IV.  DISCUSSION

Even if the Court were to exclude the updated Anders report, the Court could still consider these "new" references under the law of the case.  The Federal Circuit stated that lay witnesses in a non-technical case could testify to factual matters in helping the jury arrive at its opinion as to obviousness so long as they did express an opinion as to invalidity.  The Court further held that where the technology is easily understandable, expert testimony is not even required. *Meyer Intellectual Properties Ltd.,* 690 F.3d at 1377.  Here, the Court has ample evidence that the use of plunger or piston to froth milk has been in use since at least 1916 and during subsequent years. *See,* descriptions of prior art that were included in Meyer's responses to Bodum's SOF's Nos. 54, 38, 39, 44, and 45.

The standard for obviousness is located in Section 103(a) of the Patent Act.  35 U.S.C. § 103(a).  This section provides that a patent may not be issued "if the differences between the subject

- 6-

matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." This is a question of law for the court based on underlying factual considerations. *Graham v. John Deere Co.,* 383 U.S. 1, 17 (1966). The use of common sense is allowed if the matters are not overly technical. *Meyer Intellectual Properties Ltd.,* 690 F.3d at 1375.

The prosecution history shows that the Patent and Trademark Office (the "PTO") rejected the application as obvious prior to an amendment that adopted the height to diameter ratio of "at least 2:1". There is no indication of why this ratio is important other than making frothing faster. The evidence shows that the Bodum 3-Cup French Press Coffee Maker had an external 130mm height to 64mm diameter, an internal ratio of 118mm to 64mm and exterior ratio of 130mm to internal of 64mm. The claims do not specify which ratio is the appropriate one. Furthermore, it is hard to see that a very minor difference in the ratio would not constitute equivalence.

Here the prior art Ghidini Patent teaches that a container of milk can be frothed using a plunger. The prior art Bodum 3-Cup French Press Coffee Maker included a container having a height to diameter ration of at least 2 to 1 under certain measurements and a plunger body having a circumference, a screen and a spring positioned about the circumference of the plunger body such that

- 7-

the spring is biased to hold the screen in place in contact with,
though not sealable connected to the container.  It would appear
reasonable for one of ordinary skill in the art to combine these
references.  To quote the concurring judge in the federal circuit
in this case:

> the patents essentially claim the use of prior
> art French press coffee maker to froth milk.
> Instead of making coffee by using the plunger
> to separate coffee from coffee grounds, the
> plunger is depressed to froth milk.  The idea
> of frothing cold milk by the use of aeration
> rather than steam is not new as reflected in
> the prior art Ghidini patent. Under the
> Supreme Court's decision in *KSR International
> Co. v. Teleflex, Inc.,* 550 U.S. 398, 420, 127
> S.Ct. 1727, 167 L.Ed. 2d 705 (207), and its
> predecessors, it would be reasonable to expect
> that the claims would have been rejected as
> obvious by the examiner, and, if not, that
> they would have been found obvious on summary
> judgment by the district court.

*Meyer Intellectual Properties Ltd.,* 690 F.3d at 1380.

The Court agrees and finds that as a matter of law the '087
and '122 patents are obvious in light of the Bodum 3-Cup French
Press Coffee Maker and the Ghidini Reissue Patent.  Accordingly,
Summary Judgment is rendered in favor of Bodum and against Meyer
and the '087 and the '122 patents are ruled invalid based on
obviousness.

## V.  MEYER'S MOTION FOR SUMMARY JUDGMENT
## ON INFRINGEMENT AND NO INEQUITABLE CONDUCT

In so far as the Court has invalidated the '087 and '122
Patents for obviousness, the motions of Meyer are denied as moot.

- 8-

## VI. CONCLUSION

For the reasons stated herein, the Plaintiffs' Motion to Strike is denied. Defendant's Motion for Summary Judgment is granted. The plaintiff's motion for summary Judgment is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:4/7/2014

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6,1
### Eastern Division

Meyer Intellectual Properties Limited, et al.

Plaintiff,

v.

Case No.: 1:06−cv−06329

Honorable Harry D. Leinenweber

Bodum, Inc.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, April 7, 2014:

      MINUTE entry before the Honorable Harry D. Leinenweber:Plaintiffs' Motion to Strike is denied. Defendants' Motion for Summary Judgment is granted. The plaintiff's motion for summary judgment is denied.Mailed notice(wp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.



US005780087A

# United States Patent [19]

Brady

[11] **Patent Number:** 5,780,087

[45] **Date of Patent:** Jul. 14, 1998

[54] **APPARATUS AND METHOD FOR FROTHING LIQUIDS**

[76] Inventor: **Frank A. Brady**, 3166 Blackhawk Meadows Dr., Danville, Calif. 94506

[21] Appl. No.: **717,764**

[22] Filed: **Sep. 23, 1996**

[51] Int. Cl.⁶ ............................................. **A23C 23/00**

[52] U.S. Cl. ........................... 426/474; 426/519; 426/564; 426/569; 426/570

[58] Field of Search .................... 426/312, 317, 426/474, 519, 590, 564, 569, 570; 366/256

[56] **References Cited**

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 52,019 | 5/1918 | Biette | D7/310 |
| D. 181,143 | 10/1957 | Gundelfinger | D7/317 X |
| D. 228,823 | 10/1973 | Oelschlaeger | D7/397 |
| D. 342,414 | 12/1993 | Jorgensen | D7/317 |
| D. 343,763 | 2/1994 | Zimmerman | D7/548 |
| D. 372,627 | 8/1996 | Ireland | D7/319 |
| 548,712 | 10/1885 | Laney | 366/333 X |
| 1,637,103 | 7/1927 | Corwin | 366/130 |
| 1,998,692 | 4/1935 | Van Rossem et al. | 259/113 |
| 2,053,021 | 9/1936 | Cassol | 53/3 |
| 2,221,486 | 8/1940 | Zoia | 53/3 |
| 2,291,708 | 8/1942 | Gluck | 259/113 |
| 2,481,352 | 9/1949 | Sabatella | 259/113 |
| 2,726,071 | 12/1955 | Bernhardt | 259/113 |
| 2,900,896 | 8/1959 | Bondanini | 99/287 |
| 2,935,928 | 5/1960 | Keating et al. | 99/287 |
| 3,137,228 | 6/1964 | Elow | 99/287 |
| 3,307,474 | 3/1967 | Kasher | 99/287 |
| 3,546,129 | 12/1970 | Berg et al. | 252/359 |
| 3,927,608 | 12/1975 | Doyel | 99/297 |
| 4,010,934 | 3/1977 | McCord et al. | 259/116 |
| 4,650,583 | 3/1987 | Bondanini | 210/474 |
| 4,676,655 | 6/1987 | Handler | 366/130 |
| 4,737,036 | 4/1988 | Offerman | 366/130 |

(List continued on next page.)

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 384589 | 12/1931 | Belgium . |
| 408126 | 3/1935 | Belgium . |
| 167423 | 1/1986 | European Pat. Off. . |
| 642130 | 8/1928 | France . |
| 965122 | 9/1950 | France . |
| 1055182 | 2/1954 | France . |
| 333081 | 4/1919 | Germany . |
| 4239380 A1 | 1/1994 | Germany . |
| MI 94/U00071 | 11/1994 | Italy . |
| 165229 | 6/1921 | United Kingdom . |
| 237660 | 8/1925 | United Kingdom . |
| 363543 | 12/1931 | United Kingdom . |
| 395548 | 7/1933 | United Kingdom . |

## OTHER PUBLICATIONS

Italian Utility Model Application No. MI94/U000771.

*Primary Examiner*—Milton Cano
*Attorney, Agent, or Firm*—Limbach & Limbach L.L.P.

[57] **ABSTRACT**

An improved method for using the same is disclosed which permits the frothing of a liquid, such as milk, without the need for the traditional steam and/or electricity. In one embodiment of the invention, the apparatus has a container for holding the liquid, a cylindrical element, such as a rod, which extends vertically through the container's lid for the length of the container and terminating in a plunger device which is used to rapidly pump and agitate the liquid in the container to accomplish the frothing of the liquid. The preferred embodiment of the plunger has at least three main parts which includes a top plate and a base plate which are connected with a screen between them for permitting the flow through of the liquid. Also, between the top and bottom plates of the plunger is a spring which is positioned about the outer edges of the screen to bias the screen in close contact with the inner wall of the container, such that the plunger will move slidably along the inner wall of the container when the plunger is moving rapidly through the container of liquid to froth the liquid. The plunger and its components (except for the screen) have a diameter which is slightly less than the inside diameter of the container such that the plunger can slidably move along, and in contact with, the inner wall of the container when the plunger is in motion.

**7 Claims, 3 Drawing Sheets**



**5,780,087**

Page 2

| U.S. PATENT DOCUMENTS | | | |
|---|---|---|---|
| 4,946,286 | 8/1990 | Purkapile | 366/247 |
| 5,154,110 | 10/1992 | Chang | 99/281 |
| 5,284,389 | 2/1994 | Lumsden | 366/256 |
| 5,441,752 | 8/1995 | Sandin | 426/82 |
| 5,461,968 | 10/1995 | Portman | 99/287 |
| 5,478,586 | 12/1995 | Connor | 426/431 |
| 5,498,757 | 3/1996 | Johnson et al. | 426/520 |
| 5,580,169 | 12/1996 | Ghidini | 366/256 |

U.S. Patent    Jul. 14, 1998    Sheet 1 of 3    5,780,087



**FIG. 1**

**FIG. 2**

JA20014



FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

Case: 14-1472 Case: 14-1472 Document: 19 Page: 69 Filed: 07/14/2014



**FIG. 8**

5,780,087

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**APPARATUS AND METHOD FOR FROTHING LIQUIDS**

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a new and improved method and apparatus for frothing liquids, such as milk. In particular, the invention relates to an apparatus and method for frothing which allows the user to obtain foamy, frothed milk without the use of a complicated steamer device.

2. Discussion of the Prior Art

For many years there have been a variety of steamers used to foam or froth milk. Most of the prior art foaming devices are complicated machines which involve the use of steam to aerate or foam the liquid. Most of these devices involve at least a steam generator which provides superheated steam and an air channel which provides air flow. The steam and air are mixed in the pipes, and output through a single tube which is normally positioned to be placed into a container of milk. When the steam and air are discharged from the tube into the milk, the frothing process begins. After a time, the steam and air froth the milk to the desired consistency, and the user is able to use the frothed milk. However, the froth must be used within a relatively short period of time because its life is limited because of the water content which is left from the use of the steam to accomplish the frothing.

Coffee drinks requiring frothed milk, such as cappuccino, have become much more popular in recent years, increasing the need for milk frothing devices. However, milk frothers have not departed significantly from the standard steam-infusion type machines. No real efforts have been made to make them easier to use or more accessible to the general public.

One disadvantage of the prior art devices (in addition to their complex nature described above) is that they are often large and unwieldy, possessing a number of tubes or pipes through which the pressurized steam is injected into the milk. These large and unwieldy devices are expensive to make and purchase, and take up a significant amount of counter or storage space. Moreover, one does not always have the time or inclination to set up and wait for the cumbersome steaming devices to work. As a result, a consumer will often forego the desire to have one of these ever popular coffee drinks requiring frothed milk, and will simply settle for something else.

The prior art devices also require an energy source to create the pressurized steam, and are therefore limited to being positioned near an energy source such as a wall outlet. Such a requirement will usually preclude the use of the device in countries having different current requirements such as 110/120 voltage, unless the device is equipped to operate in the various current modes. Such a dual voltage feature (if available) would undoubtedly result in an even more expensive apparatus. Thus, as a result of the size, various tubes and pipes, internal parts, and electrical hook-ups of these prior art devices, they are also often difficult to clean and maintain, not to mention their obvious expense.

As previously mentioned, there is also the disadvantage of the prior art devices which uses steam in the frothing process that due to the water content in the froth, the froth has a very limited life. This is a serious drawback of these devices especially where it is desirable to prepare the froth in advance such as where it is to be served to guests during a later ocassion.

What is needed, and is lacking in the prior art, is a device to froth liquids, such as milk, which is simple to use, has no need for electricity or steam, and is relatively easy to clean and store.

## SUMMARY OF THE INVENTION

The apparatus of the present invention allows for the quick and efficient frothing of liquids such as milk with the frothing of the liquid resulting from the agitation which results from the repeated and rapid pumping of the liquid by use of a manual plunger within a container of the liquid.

In accordance with one aspect of the present invention, an apparatus for frothing milk is provided which does not require the use of steam or electricity. Instead, as previously noted, the frother is provided with a container for holding the liquid, a plunger attached to a rod, and a lid for permitting a repeated and rapid agitation of the liquid by a pumping action. The up and down rapid pumping motion of the plunger through the liquid which is introduced into the container froths the milk without the need for electricity or steam.

In accordance with another aspect of the present invention, the container is made of glass or clear plastic in order to enable the user to see when the milk has been sufficiently frothed as well as gauge the amount of liquid being introduced into the container. The glass or plastic container also allows for easy cleaning of the device.

In accordance with yet another aspect of the present invention, the plunger and rod are completely removable from the container, thus further allowing for ease in cleaning the device as well as easy storage of all pieces of the frothing device.

Further objects and features of the invention will be from the specification, claims and the following description of the appended figures.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a milk frother constructed according to the invention.

FIG. 2 is an elevational sectional view of a milk frother constructed according to the invention.

FIG. 3 is a top plan view taken along lines 3—3 of FIG. 2.

FIG. 4 is a plan view of the screen of the plunger section of the milk frother described by the present invention.

FIG. 5 is a bottom plan view taken along lines 5—5 of FIG. 2.

FIG. 6 is an enlarged fragmentary sectional view depicting the top section of the milk frother described by the current invention.

FIG. 7 is an enlarged fragmentary cross-sectional view of the plunger section of the milk frother described by the current invention.

FIG. 8 is an exploded perspective view of the pieces of the plunger section of the milk frother described by the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, the preferred embodiment of the inventive apparatus as a milk frother is shown, generally referred to with the reference numeral 1. Frother 1 has a container 10, a lid 20, a rod 30 and a plunger 40.

FIG. 2 illustrates an operational milk frother constructed in accordance with the present invention. The various aspects and features of the invention will be described with reference to FIG. 2 as well as FIGS. 3 through 8 which depict enlargements and cross sectional views of the various parts of the FIG. 2 apparatus.

5,780,087

3

Apparatus 1 consists primarily of container 10, lid 20, rod 30 and plunger 40 at the terminal end of the rod 30. Container 10 is preferably made of glass, and has an opening 11 at one end to receive a liquid. Lid 20 is adapted to fit securely about opening 11 onto container 10. An opening 21 is located in the centermost region of lid 20 and is adapted to receive a rod 30. Opening 21 has a diameter or width sufficient to receive and accomodate rod 30 and further allow for the up and down vertical motion of rod 30 through opening 21 when plunger 40 is being pumped to agitate the liquid contained in container 10.

Rod 30 further has an elongated vertical member 33 which extends through opening 21 with its bottom portion terminating in an externally threaded screw 32, and its top portion terminating in a handle 31. Rod 30 has a length which is sufficient to permit handle 31 to remain a distance above opening 21 and lid 20 at all times, even while the bottom end of the rod 30 is depressed in container 10 as during the downward pumping of rod 30.

Plunger 40 is screwably mounted to the terminal end of the rod 30. Plunger 40 further has a top plate 43, a bottom plate 41, a spring 49 and a screen 42 located between top plate 43 and bottom plate 41.

Plunger top plate 43 is best described with reference to FIGS. 3, 7 and 8. Top plate 43 has a diameter just slightly less than the diameter of container 10 since top plate 43 must be able to fit within container 10 and be permited to move up and down in a vertical motion when rod 30 is moved up and down through opening 21 in container 10. The sides of the top plate 43 are defined by an annular groove 48 which is adapted to receive a circular coil spring 49. Top plate 43 is further provided with an orifice 46 located about its centermost region for receiving the terminal end 32 of rod 30. Top plate 43 is further provided with a series of slots 43a through which air and liquid can pass.

Plunger 40 is further provided with a screen 42 which is located between top plate 43 and bottom plate 41 and which is best described with references to FIGS. 4, 7 and 8. Screen 42 is a circular disc of wire mesh and has a diameter which is preferably greater than the diameter of the container such that the edges of screen 40 may be draw up in the direction of top plate 43 when plunger 40 is assembled. As does top plate 43, screen 42 further has a central orifice 42a adequate to receive rod 30 and its terminal end 32 when plunger 40 is assembled in accordance with this invention. In the present invention. the central orifice 42a in the screen 42 is reinforced such as to prevent ripping of the screen when the rod is passed through the orifice 42a during the repeated pumping of rod 30 through plunger 40.

Plunger 40 further has a bottom plate 41 which is best understood from a discussion of FIGS. 5, 7 and 8. Bottom plate 41 also has an orifice 41a about its centermost region for screwably receiving rod 30 with terminal end 32. Bottom plate 41 has an outer diameter which is slightly less than the diameter of container 10, and a central nut 41b which is screwably connected to terminal end 32 of rod 30 to hold the bottom plate 41 and top plate 43 together when plunger 40 is assembled. Bottom plate 41 is further equipped with a number of feet-like protrusions 41' about its underside region for assisting in the agitation of the liquid when plunger 40 is in the pumping state and to further prevent the plunger from making actual contact with the bottom of container 10 when the apparatus is in operation when plunger 40 is fully depressed in container 10.

When assembled, plunger 40 has screen 42 placed between top plate 43 and bottom plate 41 with the edges of

4

the screen 42 drawn up over the sides of the top plate 43, as shown in FIG. 7 (the screen is illustrated as wavy line 42 which is shown adjacent spring 49). Spring 49 (FIGS. 7 and 8) is further placed within the annular groove 48 of plate 41 and about screen 42 so as to bias screen 42 such that it will be proximate to, though not in sealable contact with the inner wall of container 10 and plunger 40 with plates 41 and 43, together with screen 42 and spring 49, will be permitted to slidably move vertically along the inner wall of container 10 when plunger 40 is in the pumping mode to agitate the liquid in container 10. Lid 20 has a nut 50 securely attached to the under side of the lid 20 about opening 21, such that when nut 50 is securely in place none of the liquid in container 10 will be permitted to escape even when the plunger is in the rapidly pumping mode.

When in use, container 10 is filled approximately one-third the height of container 10 with a liquid, such as milk. Lid 20 is placed on top of container 10.

In the preferred embodiment of the invention. the height of container 10 is approximately twice the diameter of container 10. With these ratios, container 10 has a relatively short radius compared to its height which would result in the liquid becoming frothed with fewer pumps of plunger 40 through the liquid than would be required were the liquid to occupy a larger area as would be the case where the radius of container 10 was larger.

Furthermore, in the preferred embodiment of the invention where milk is the liquid to be frothed. it has been determined that the use of nonfat milk is preferable to lowfat or whole milk, although all such liquids may be frothed with the inventive apparatus. One further advantage of the apparatues of the invention is that the milk or other liquid to be frothed may be introduced into container 10 either cold. at room temperature. or heated. However, it may be preferable to use cold milk or milk which is at room temperature since in this way the container will be more comfortable to hold or touch during the pumping and frothing process. If cold milk is used, but hot froth is desired, the resulting froth may be quickly heated in a microwave or otherwise.

In a further embodiment of the present invention, container 10 is also provided with a phlanged lip 12 and a pour spout 11a which allows for easy pouring of the resulting foam and residual liquid after the frothing procedure has been completed. The phlanged lip 12 allows for easy dispensing of the foam from any angle. while pour spout 11a permits easy pouring of any residual liquid from container 10.

The invention as set forth herein is also for a new and improved method for frothing a liquid which does not require the use of the traditional steam previously thought needed for this process. The new and improved method of the invention is directed to the use of the apparatus which is generally illustrated in FIGS. 1 and 2 to froth liquids. In the new and improved method of the invention. a liquid is introduced into a container 10 which has been equipped with a plunger of the type generally illustrated by reference numeral 40, including rod 30, in a device 1 (one embodiment of which is made in accordance with this invention and described above) for repeatedly and rapidly pumping the liquid several times in a vertical motion until the liquid is aerated and becomes frothed.

The method of the invention includes use of a plunger 40 which may be moved in a vertical movement with rapid successions through container 10 of liquid until the desired degree of frothing has resulted. Container 10 for the liquid is preferably made of glass and plunger 40 has a top plate 43

5,780,087

**5**

and a bottom plate **42** between which is placed a screen **42** through which the liquid can pass and a spring **49** for biasing the screen to be in close contact with the inner wall of container **10** such that when plunger **40** is pumping vertically through the container in a rapid movement plunger **40** will slideably move along the inner wall of container **10** to sufficiently agitate the liquid until it has reached the desired froth consistency. Where the container for the liquid has a height which is approximately twice the diameter of the container, the liquid, particularly nonfat milk, can be expected to reach the desired froth consistency after about 20 pumps of the plunger through the liquid.

The above descriptions and drawings are for illustrative purposes only, and are not exhaustive of possible alternate embodiments of the invention. It is to be understood that the present invention is not limited to the sole embodiments described above and illustrated herein, but encompasses any and all variations falling within the scope of the appended claims and their equivalents. Thus, this invention is limited only by the following claims and their equivalents.

What is claimed as the invention is:

1. A method for aerating a liquid comprising the steps of:

providing a container characterized by a height and a diameter, the height being at least two times the diameter;

placing the liquid into the container;

introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising;

a plunger body having a circumference;

a screen; and

**6**

a spring positioned about the circumference of the plunger body such that the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container; and

pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency.

2. A method according to claim 1, wherein the container is made of glass.

3. A method according to claim 1, wherein the liquid is a milk based product.

4. A method according to claim 3 wherein the pumping step includes pumping the plunger a number of times less than or equal to twenty times, and wherein the liquid is aerated within the number of times that the plunger is pumped.

5. A method according to claim 1, wherein the plunger body comprises:

a base plate having a plurality of feet-like protrusions; and

said top plate having the spring positioned about the circumference of said top plate such that the spring is biased to hold the screen in place.

6. A method according to claim 5, wherein the screen consists of a fine wire mesh.

7. A method according to claim 1, wherein the pumping step includes pumping the plunger a number of times less than or equal to twenty times, and wherein the liquid is aerated within the number of times that the plunger is pumped.

*   *   *   *   *



US005939122A

# United States Patent [19]

## Brady

[11] **Patent Number:** 5,939,122

[45] **Date of Patent:** \*Aug. 17, 1999

[54] **METHOD FOR FROTHING LIQUIDS**

[76] Inventor: **Frank A. Brady**, 3166 Blackhawk
Meadows Dr., Danville, Calif. 94506

[ * ] Notice: This patent is subject to a terminal disclaimer.

[21] Appl. No.: **09/028,313**

[22] Filed: **Feb. 24, 1998**

### Related U.S. Application Data

[63] Continuation of application No. 08/717,764, Sep. 23, 1996, Pat. No. 5,780,087.

[51] Int. Cl.⁶ ..................................................... A23C 23/00
[52] U.S. Cl. ......................... **426/474**; 426/519; 426/564; 426/569; 426/570
[58] Field of Search ..................................... 426/312, 317, 426/474, 519, 590, 564, 569, 570; 366/256

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 52,019 | 5/1918 | Biette | D7/310 |
| D. 181,143 | 10/1957 | Gundelfinger | D7/317 X |
| D. 228,823 | 10/1973 | Oelschlaeger | D7/397 |
| D. 342,414 | 12/1993 | Jorgensen | D7/317 |
| D. 343,763 | 2/1994 | Zimmerman | D7/548 |
| D. 372,627 | 8/1996 | Ireland | D7/319 |
| 548,712 | 10/1885 | Laney | 366/333 X |
| 1,637,103 | 7/1927 | Corwin | 366/310 |
| 1,998,692 | 4/1935 | Van Rossem et al. | 259/113 |
| 2,053,021 | 9/1936 | Cassol | 53/3 |
| 2,221,486 | 8/1940 | Zoia | 53/3 |
| 2,291,708 | 8/1942 | Gluck | 259/113 |
| 2,481,352 | 9/1949 | Sabatella | 259/113 |
| 2,726,071 | 12/1955 | Bernhardt | 259/113 |
| 2,900,896 | 8/1959 | Bondanini | 99/297 |
| 2,935,928 | 5/1960 | Keating et al. | 99/287 |
| 3,137,228 | 6/1964 | Elow | 99/287 |
| 3,307,474 | 3/1967 | Kasher | 99/287 |
| 3,546,129 | 12/1970 | Berg et al. | 252/359 |
| 3,927,608 | 12/1975 | Doyel | 99/297 |
| 4,010,934 | 3/1977 | McCord et al. | 259/116 |
| 4,650,583 | 3/1987 | Bondanini | 210/474 |

| | | | |
|---|---|---|---|
| 4,676,655 | 6/1987 | Handler | 366/130 |
| 4,737,036 | 4/1988 | Offerman | 366/130 |

(List continued on next page.)

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 384589 | 12/1931 | Belgium . |
| 408126 | 3/1935 | Belgium . |
| 642130 | 8/1928 | France . |
| 965122 | 9/1950 | France . |
| 1055182 | 2/1954 | France . |
| 333081 | 4/1919 | Germany . |
| MI94/U0771 | 11/1994 | Italy . |
| 165229 | 7/1921 | United Kingdom . |
| 237660 | 8/1925 | United Kingdom . |
| 363543 | 12/1931 | United Kingdom . |
| 395548 | 7/1933 | United Kingdom . |

*Primary Examiner*—Milton Cano
*Attorney, Agent, or Firm*—Limbach & Limbach L.L.P.

[57] **ABSTRACT**

A method which permits the frothing of a liquid, such as milk, without the need for the traditional steam and/or electricity. In one embodiment of the invention, the apparatus has a container for holding the liquid, a cylindrical element, such as a rod, which extends vertically through the container's lid for the length of the container and terminating in a plunger device which is used to rapidly pump and agitate the liquid in the container to accomplish the frothing of the liquid. The preferred embodiment of the plunger has at least three main parts which includes a top plate and a base plate which are connected with a screen between them for permitting the flow through of the liquid. Also, between the top and bottom plates of the plunger is a spring which is positioned about the outer edges of the screen to bias the screen in close contact with the inner wall of the container, such that the plunger will move slidably along the inner wall of the container when the plunger is moving rapidly through the container of liquid to froth the liquid. The plunger and its components (except for the screen) have a diameter which is slightly less than the inside diameter of the container such that the plunger can slidably move along, and in contact with, the inner wall of the container when the plunger is in motion.

**26 Claims, 3 Drawing Sheets**



**5,939,122**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,946,286 | 8/1990 | Purkapile | 366/247 |
| 5,154,110 | 10/1992 | Chang | 99/281 |
| 5,284,389 | 2/1994 | Lumsden | 366/256 |
| 5,441,752 | 8/1995 | Sandin | 426/82 |
| 5,461,968 | 10/1995 | Portman | 99/287 |
| 5,478,586 | 12/1995 | Connor | 426/431 |
| 5,498,757 | 3/1996 | Johnson et al. | 366/130 |
| 5,580,169 | 12/1996 | Ghidini | 366/333 X |
| 5,780,087 | 7/1998 | Brady | 426/474 |



**FIG. 1**

**FIG. 2**

JA20022



FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

U.S. Patent     Aug. 17, 1999     Sheet 3 of 3     5,939,122



**FIG. 8**

5,939,122

**1**

## METHOD FOR FROTHING LIQUIDS

This is a continuation of application Ser. No. 08/717,764. filed Sept. 23, 1996 now U.S. Pat. No. 5,780,087.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a new and improved method and apparatus for frothing liquids, such as milk. In particular, the invention relates to an apparatus and method for frothing which allows the user to obtain foamy, frothed milk without the use of a complicated steamer device.

2. Discussion of the Prior Art

For many years there have been a variety of steamers used to foam or froth milk. Most of the prior art foaming devices are complicated machines which involve the use of steam to aerate or foam the liquid. Most of these devices involve at least a steam generator which provides superheated steam and an air channel which provides air flow. The steam and air are mixed in the pipes, and output through a single tube which is normally positioned to be placed into a container of milk. When the steam and air are discharged from the tube into the milk, the frothing process begins. After a time, the steam and air froth the milk to the desired consistency, and the user is able to use the frothed milk. However, the froth must be used within a relatively short period of time because its life is limited because of the water content which is left from the use of the steam to accomplish the frothing.

Coffee drinks requiring frothed milk, such as cappuccino, have become much more popular in recent years, increasing the need for milk frothing devices. However, milk frothers have not departed significantly from the standard steam-infusion type machines. No real efforts have been made to make them easier to use or more accessible to the general public.

One disadvantage of the prior art devices (in addition to their complex nature described above) is that they are often large and unwieldy, possessing a number of tubes or pipes through which the pressurized steam is injected into the milk. These large and unwieldy devices are expensive to make and purchase, and take up a significant amount of counter or storage space. Moreover, one does not always have the time or inclination to set up and wait for the cumbersome steaming devices to work. As a result, a consumer will often forego the desire to have one of these ever popular coffee drinks requiring frothed milk, and will simply settle for something else.

The prior art devices also require an energy source to create the pressurized steam, and are therefore limited to being positioned near an energy source such as a wall outlet. Such a requirement will usually preclude the use of the device in countries having different current requirements such as 110/120 voltage, unless the device is equipped to operate in the various current modes. Such a dual voltage feature (if available) would undoubtedly result in an even more expensive apparatus. Thus, as a result of the size, various tubes and pipes, internal parts, and electrical hook-ups of these prior art devices, they are also often difficult to clean and maintain, not to mention their obvious expense.

As previously mentioned, there is also the disadvantage of the prior art devices which uses steam in the frothing process that due to the water content in the froth, the froth has a very limited life. This is a serious drawback of these devices especially where it is desirable to prepare the froth in advance such as where it is to be served to guests during a later ocassion.

**2**

What is needed, and is lacking in the prior art, is a device to froth liquids, such as milk, which is simple to use, has no need for electricity or steam, and is relatively easy to clean and store.

### SUMMARY OF THE INVENTION

The apparatus of the present invention allows for the quick and efficient frothing of liquids such as milk with the frothing of the liquid resulting from the agitation which results from the repeated and rapid pumping of the liquid by use of a manual plunger within a container of the liquid.

In accordance with one aspect of the present invention, an apparatus for frothing milk is provided which does not require the use of steam or electricity. Instead, as previously noted, the frother is provided with a container for holding the liquid, a plunger attached to a rod, and a lid for permitting a repeated and rapid agitation of the liquid by a pumping action. The up and down rapid pumping motion of the plunger through the liquid which is introduced into the container froths the milk without the need for electricity or steam.

In accordance with another aspect of the present invention, the container is made of glass or clear plastic in order to enable the user to see when the milk has been sufficiently frothed as well as gauge the amount of liquid being introduced into the container. The glass or plastic container also allows for easy cleaning of the device.

In accordance with yet another aspect of the present invention, the plunger and rod are completely removable from the container, thus further allowing for ease in cleaning the device as well as easy storage of all pieces of the frothing device.

Further objects and features of the invention will be from the specification, claims and the following description of the appended figures.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a milk frother constructed according to the invention.

FIG. 2 is an elevational sectional view of a milk frother constructed according to the invention.

FIG. 3 is a top plan view taken along lines 33 of FIG. 2.

FIG. 4 is a plan view of the screen of the plunger section of the milk frother described by the present invention.

FIG. 5 is a bottom plan view taken along lines 5—5 of FIG. 2.

FIG. 6 is an enlarged fragmentary sectional view depicting the top section of the milk frother described by the current invention.

FIG. 7 is an enlarged fragmentary cross-sectional view of the plunger section of the milk frother described by current invention.

FIG. 8 is an exploded perspective view of the pieces of the plunger section of the milk frother described by the present invention.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, the preferred embodiment of the inventive apparatus as a milk frother is shown, generally referred to with the reference numeral 1. Frother 1 has a container 10, a lid 20, a rod 30 and a plunger 40.

FIG. 2 illustrates an operational milk frother constructed in accordance with the present invention. The various

JA20025

5,939,122

| 3 | 4 |

aspects and features of the invention will be described with reference to FIG. 2 as well as FIGS. 3 through 8 which depict enlargements and cross sectional views of the various parts of the FIG. 2 apparatus.

Apparatus 1 consists primarily of container 10, lid 20, rod 30 and plunger 40 at the terminal end of the rod 30. Container 10 is preferably made of glass, and has an opening 11 at one end to receive a liquid. Lid 20 is adapted to fit securely about opening 11 onto container 10. An opening 21 is located in the centermost region of lid 20 and is adapted to receive a rod 30. Opening 21 has a diameter or width sufficient to receive and accomodate rod 30 and further allow for the up and down vertical motion of rod 30 through opening 21 when plunger 40 is being pumped to agitate the liquid contained in container 10.

Rod 30 further has an elongated vertical member 33 which extends through opening 21 with its bottom portion terminating in an externally threaded screw 32, and its top portion terminating in a handle 31. Rod 30 has a length which is sufficient to permit handle 31 to remain a distance above opening 21 and lid 20 at all times, even while the bottom end of the rod 30 is depressed in container 10 as during the downward pumping of rod 30.

Plunger 40 is screwably mounted on the terminal end of the rod 30. Plunger 40 further has a top plate 43, a bottom plate 41, a spring 49 and a screen 42 located between top plate 43 and bottom plate 41.

Plunger top plate 43 is best described with reference to FIGS. 3, 7 and 8. Top plate 43 has a diameter just slightly less than the diameter of container 10 since top plate 43 must be able to fit within container 10 and be permited to move up and down in a vertical motion when rod 30 is moved up and down through opening 21 in container 10. The sides of the top plate 43 are defined by an annular groove 48 which is adapted to receive a circular coil spring 49. Top plate 43 is further provided with an orifice 46 located about its centermost region for receiving the terminal end 32 of rod 30. Top plate 43 is further provided with a series of slots 43a through which air and liquid can pass.

Plunger 40 is further provided with a screen 42 which is located between top plate 43 and bottom plate 41 and which is best described with references to FIGS. 4, 7 and 8. Screen 42 is a circular disc of wire mesh and has a diameter which is preferably greater than the diameter of the container such that the edges of screen 42 may be draw up in the direction of top plate 43 when plunger 40 is assembled. As does top plate 43, screen 42 further has a central orifice 42a adequate to receive rod 30 and its terminal end 32 when plunger 40 is assembled in accordance with this inventon. In the present invention, the central orifice 42a in the screen 42 is reinforced so as to prevent ripping of the screen when the rod is passed through the orifice 42a during the repeated pumping of rod 30 through plunger 40.

Plunger 40 further has a bottom plate 41 which is best understood from a discussion of FIGS. 5, 7 and 8. Bottom plate 41 also has an orifice 41a about its centermost region for screwably receiving rod 30 with terminal end 32. Bottom plate 41 has an outer diameter which is slightly less than the diameter of container 10, and a central nut 41b which is screwably connected to terminal end 32 of rod 30 to hold the bottom plate 41 and top plate 43 together when plunger 40 is assembled. Bottom plate 41 is further equipped with a number of feet-like protrusions 41' about its underside region for assisting in the agitation of the liquid when plunger 40 is in the pumping state and to further prevent the plunger from making actual contact with the bottom of

container 10 when the apparatus is in operation when plunger 40 is fully depressed in container 10.

When assembled, plunger 40 has screen 42 placed between top plate 43 and bottom plate 41 with the edges of the screen 42 drawn up over the sides of the top plate 43, as shown in FIG. 7 (the screen is illustrated as wavy line 42 which is shown adjacent spring 49). Spring 49 (FIGS. 7 and 8) is further placed within the annular groove 48 of plate 41 and about screen 42 so as to bias screen 42 such that it will be proximate to, though not in sealable contact with the inner wall of container 10 and plunger 40 with plates 41 and 43, together with screen 42 and spring 49, will be permitted to slidably move vertically along the inner wall of container 10 when plunger 40 is in the pumping mode to agitate the liquid in container 10. Lid 20 has a nut 50 securely attached to the under side of the lid 20 about opening 21, such that when nut 50 is securely in place none of the liquid in container 10 will be permitted to escape even when the plunger is in the rapidly pumping mode.

When in use, container 10 is filled approximately one-third the height of container 10 with a liquid, such as milk. Lid 20 is placed on top of container 10.

In the preferred embodiment of the invention, the height of container 10 is approximately twice the diameter of container 10. With these ratios, container 10 has a relatively short radius compared to its height which would result in the liquid becoming frothed with fewer pumps of plunger 40 through the liquid than would be required were the liquid to occupy a larger area as would be the case where the radius of container 10 was larger.

Furthermore, in the preferred embodiment of the invention where milk is the liquid to be frothed, it has been determined that the use of nonfat milk is preferable to lowfat or whole milk, although all such liquids may be frothed with the inventive apparatus. One further advantage of the apparatus of the invention is that the milk or other liquid to be frothed may be introduced into container 10 either cold, at room temperature, or heated. However, it may be preferable to use cold milk or milk which is at room temperature since in this way the container will be more comfortable to hold or touch during the pumping and frothing process. If cold milk is used, but hot froth is desired, the resulting froth may be quickly heated in a microwave or otherwise.

In a further embodiment of the present invention, container 10 is also provided with a phlanged lip 12 and a pour spout 11a which allows for easy pouring of the resulting foam and residual liquid after the frothing procedure has been completed. The phlanged lip 12 allows for easy dispensing of the foam from any angle, while pour spout 11a permits easy pouring of any residual liquid from container 10.

The invention as set forth herein is also for a new and improved method for frothing a liquid which does not require the use of the traditional steam previously thought needed for this process. The new and improved method of the invention is directed to the use of the apparatus which is generally illustrated in FIGS. 1 and 2 to froth liquids. In the new and improved method of the invention, a liquid is introduced into a container 10 which has been equipped with a plunger of the type generally illustrated by reference numeral 40, including rod 30, in a device 1 (one embodiment of which is made in accordance with this invention and described above) for repeatedly and rapidly pumping the liquid several times in a vertical motion until the liquid is aerated and becomes frothed.

The method of the invention includes use of a plunger 40 which may be moved in a vertical movement with rapid

JA20026

5,939,122

| 5 | 6 |

successions through container **10** of liquid until the desired degree of frothing has resulted. Container **10** for the liquid is preferably made of glass and plunger **40** has a top plate **43** and a bottom plate **42** between which is placed a screen **42** through which the liquid can pass and a spring **49** for biasing the screen to be in close contact with the inner wall of container **10** such that when plunger **40** is pumping vertically through the container in a rapid movement plunger **40** will slideably move along the inner wall of container **10** to sufficeiently agitate the liquid until it has reached the desired froth consistency. Where the container for the liquid has a height which is approximately twice the diameter of the container, the liquid, particularly nonfat milk, can be expected to reach the desired froth consistency after about 20 pumps of the plunger through the liquid.

The above descriptions and drawings are for illustrative purposes only, and are not exhaustive of possible alternate embodiments of the invention. It is to be understood that the present invention is not limited to the sole embodiments described above and illustrated herein, but encompasses any and all variations falling within the scope of the appended claims and their equivalents. Thus, this invention is limited only by the following claims and their equivalents.

What is claimed as the invention is:

1. A method for aerating a liquid comprising the steps of:
providing a container characterized by a height and a diameter, the height being at least two times the diameter, the container having an inside wall;

placing the liquid into the container;

introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising:
a plunger body having a circumference; and
a screen; and

pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency,
the plunger body further including means for holding the screen such that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the container.

2. A method according to claim **1**, wherein the container is made of glass.

3. A method according to claim **1**, wherein the liquid is a milk based product.

4. A method according to claim **3** wherein the liquid is aerated within 20 pumps of the plunger.

5. A method according to claim **1**, wherein the plunger body comprises:

a base plate having a plurality of feet-like protrusions; and

a top plate, said top plate having the spring positioned about the circumference of said top plate such that the spring is biased to hold the screen in place and in sliding contact with the inside wall of the container as the plunger passes through the liquid.

6. A method according to claim **5**, wherein the screen consists of a fine wire mesh.

7. A method for aerating a liquid comprising the steps of:
providing a container;

placing the liquid into the container;

introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising:

a plunger body having a bottom surface, with feet-like protrusions on the bottom surface, and
a screen; and

pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency,

whereby the feet-like protrusions on the bottom surface of the plunger body serve to assist in the agitation of the liquid during the step of pumping the plunger.

8. The method of claim **7**, wherein:
the container is characterized by a height and a diameter, the height being at least two times the diameter.

9. The method of claim **8**, wherein:
the container has an inner wall;

the plunger body has a circumference; and

the plunger body further includes means for ensuring that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the container.

10. A method for aerating a liquid comprising the steps of:
providing a housing characterized by a height and a diameter, the height being at least two times the diameter, the housing having an inside wall;

introducing a rod terminating in a plunger into liquid in said housing so that the plunger contacts the liquid, the plunger comprising:
a plunger body having a circumference; and
a screen; and

pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency,

the plunger body further including means for holding the screen such that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing.

11. A method according to claim **10**, wherein the housing is made of glass.

12. A method according to claim **10**, wherein the liquid is a milk based product.

13. A method according to claim **12** wherein the liquid is aerated within 20 pumps of the plunger.

14. A method according to claim **10**, wherein the plunger body comprises:

a base plate having a plurality of feet-like protrusions; and

a top plate, said top plate having the spring positioned about the circumference of said top plate such that the spring is biased to hold the screen in place and in sliding contact with the inside wall of the container as the plunger passes through the liquid.

15. A method according to claim **14**, wherein the screen consists of a fine wire mesh.

16. A method for aerating a liquid comprising the steps of:
providing a housing;

introducing a rod terminating in a plunger into liquid in said housing so that the plunger contacts the liquid, the plunger comprising:
a plunger body having a bottom surface, with feet-like protrusions on the bottom surface, and
a screen; and

pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid

5,939,122

7

in the housing for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency,

whereby the feet-like protrusions on the bottom surface of the plunger body serve to assist in the agitation of the liquid during the step of pumping the plunger.

17. The method of claim 16, wherein:

the housing is characterized by a height and a diameter, the height being at least two times the diameter.

18. The method of claim 17, wherein:

the housing has an inner wall;

the plunger body has a circumference; and

the plunger body further includes means for ensuring that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing.

19. A method for aerating a liquid comprising the steps of:

providing a container characterized by a height and a diameter, the height being at least two times the diameter, the container having an inside wall;

placing the liquid into the container;

introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising:

a plunger body having a circumference; and

a screen; and

pumping the plunger by moving the rod in a vertical motion such that:

a) the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency,

b) substantially no liquid passes between the circumference of the plunger body and the inside wall of the container during the pumping step.

8

20. A method according to claim 19, wherein the container is made of glass.

21. A method according to claim 19, wherein the liquid is a milk based product.

22. A method according to claim 21 wherein the liquid is aerated within 20 pumps of the plunger.

23. A method for aerating a liquid comprising the steps of:

providing a housing characterized by a height and a diameter, the height being at least two times the diameter, the housing having an inside wall;

introducing a rod terminating in a plunger into liquid in said housing so that the plunger contacts the liquid, the plunger comprising:

a plunger body having a circumference; and

a screen; and

pumping the plunger by moving the rod in a vertical motion such that:

a) the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency; and,

b) substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing during the pumping step.

24. A method according to claim 23, wherein the housing is made of glass.

25. A method according to claim 23, wherein the liquid is a milk based product.

26. A method according to claim 25 wherein the liquid is aerated within 20 pumps of the plunger.

\* \* \* \* \*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2014, I filed the above paper entitled **Brief Of Plaintiffs-Appellants Meyer Intellectual Properties Limited And Meyer Corporation, U.S.** with the Clerk of Court using CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

<u>/s/ *R. David Donoghue*</u>
R. David Donoghue

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Federal Rule of
   Appellate Procedure 32(a)(7)(B)(i).  The brief contains 8,210 words, excluding
   the parts of the brief exempted by Federal Rule of Appellate Procedure
   32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate
   Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate
   Procedure 32(a)(6).  The brief was prepared using MS Word in Times New
   Roman font, a proportionally spaced typeface, in 14-point.

Dated:  July 14, 2014                    HOLLAND & KNIGHT LLP

                                         /s/ *R. David Donoghue*
                                         Joshua C.  Krumholz
                                         10 St. James Avenue
                                         11th Floor
                                         Boston, MA 02116
                                         Tel: (617) 523-2700
                                         Fax: (617) 523-6850
                                         joshua.krumholz@hklaw.com

                                         R. David Donoghue
                                         Steven E. Jedlinski
                                         131 South Dearborn Street
                                         30th Floor
                                         Chicago, IL 60603
                                         Tel: (312) 263-3600
                                         Fax: (312) 578-6666
                                         david.donoghue@hklaw.com
                                         steven.jedlinski@hklaw.com

                                         *Attorneys for Plaintiffs-Appellant*